698 F.2d 250
 112 L.R.R.M. (BNA) 2553, 96 Lab.Cas. P 13,997
 Leonard LAWSON (81-3722), Plaintiff-Appellant,
v.
TRUCK DRIVERS, CHAUFFEURS & HELPERS, LOCAL UNION 100,
Defendant-Appellee.
George S. LEACH (81-3540), Plaintiff-Appellant,
v.
UNITED STATES POSTAL SERVICE
and
National Association of Letter Carriers
and
Local 43, National Association of Letter Carriers, et al.,
Defendants- Appellees.
 Nos. 81-3722, 81-3540.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 2, 1982.
Decided Jan. 17, 1983.
Rehearing and Rehearing En Banc
Denied Feb. 24, 1983.
 
 Andrew Dennison, Lawrence R. Fisse (argued), Batavia, Ohio, for plaintiff-appellant.
 Donetta Wiethe, Elizabeth Whitaker, Asst. U.S. Atty., Cincinnati, Ohio, for U.S. Postal Service.
 Donald J. Mooney, Cincinnati, Ohio, for Local 43, Nat. Ass'n of Letter Carriers & Ed Fisbeck.
 Thomas F. Phalen, Jr., Gary Eby, Cincinnati, Ohio, for Nat. Ass'n of Letter Carriers & Vincent Sombrotto.
 Paul Tobias (argued), Cincinnati, Ohio, for George S. Leach.
 Jonas B. Katz, Dennis Buckley (argued), Cincinnati, Ohio, for Truck Drivers, Chauffeurs & Helpers, Local Union 100.
 Before KEITH and MERRITT, Circuit Judges and PECK, Senior Circuit Judge.
 Keith, Circuit Judge, filed opinion concurring in part and dissenting in part.
 MERRITT, Circuit Judge.
 
 
 1
 In these two Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) type actions for unfair representation against unions under Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185 (1976), the essential questions on appeal are: (1) whether United Parcel Service v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981)[1] and Badon v. General Motors Corp., 679 F.2d 93 (6th Cir.1982), require that a 90-day, Ohio limitations statute for actions to vacate arbitration awards be applied to malpractice-type actions against unions for unfair representation, as well as for actions for wrongful discharge against employers; and (2) whether Mitchell should be applied retroactively to cases pending when Mitchell was decided. We hold that Mitchell applies retroactively to pending cases and that under Mitchell and Badon the Ohio statute of limitations governing suits to vacate arbitration awards applies to unfair representation actions against unions as well as to wrongful discharge actions against employers.
 
 I. FACTS
 A. Appeal No. 81-3540
 
 2
 The record reflects that on August 22, 1978, appellant Leach entered the Cincinnati, Ohio Post Office while intoxicated and shouted obscenities about his supervisor and two postal security guards. On August 29, 1978, Leach was issued a Notice of Proposed Dismissal from the Postal Service for conduct unbecoming a postal employee, effective October 6, 1978. The August, 1978, incident was not Leach's first employment problem. His disciplinary record included several warnings and two lengthy suspensions for bad conduct.
 
 
 3
 Leach's last infraction before his discharge, based on conduct similar to that for which he was ultimately discharged, was the subject of a grievance settlement which reduced his suspension from twenty-eight days to fourteen days. An important element of that settlement was that Leach join and actively participate in the Postal Service's alcohol recovery program for alcoholics. Leach was notified in the settlement that he would be discharged should subsequent disciplinary action be necessary because of continued unsatisfactory job performance. When he thereafter caused a disturbance at work, while drunk, on August 27, 1978, he was discharged.
 
 
 4
 On September 21, 1978, the defendant postal unions filed a grievance on Leach's behalf asking that Leach be reinstated. The grievance was denied by the defendant Postal Service and was eventually certified for arbitration by the unions. On February 20, 1979, the grievance was heard by Arbitrator Alan Walt. On February 27, 1979, Arbitrator Walt issued his award denying Leach's grievance. In denying the grievance and thus upholding Leach's discharge, the arbitrator found significant Leach's "progressively worsening disciplinary history caused by alcoholism."
 
 
 5
 Leach's complaint against the employer and the union under Sec. 301 was filed on October 6, 1980, more than 17 months after the Arbitrator's decision. District Judge Carl Rubin entered a final order dismissing the complaint against the postal service for wrongful discharge and against the unions for unfair representation under the 90-day Ohio limitations statute for actions to vacate arbitration awards, Ohio Rev.Code Sec. 2711.13 (1976).
 
 B. Appeal No. 81-3722
 
 6
 In October, 1976, plaintiff Lawson, employed in Ohio by the Mason & Dixon Lines, Inc. as a truck driver, was discharged. The defendant Local 100 was the employee collective bargaining representative for the truck line. The company based the discharge on alleged dishonesty in connection with the cashing of two pay checks for the same work week. Plaintiff had gotten a duplicate check by stating that the original pay check had been lost or stolen; subsequently, both checks were cashed. Plaintiff filed a grievance under the collective bargaining agreement and the grievance was eventually assigned for hearing before the Joint Conference or Committee on October 20, 1976. That Committee, composed of equal numbers of Union and employer representatives, upheld the discharge. A handwriting expert testified for the employer that the endorsements on both the checks were in the plaintiff's handwriting. Neither the Union nor the employee produced an expert witness.
 
 
 7
 After the discharge the plaintiff engaged private counsel who retained the services of a reputable handwriting expert. The expert concluded that both of the checks had not been endorsed by the plaintiff but on the contrary one bore a forged endorsement. When the Union was informed of this new evidence, an effort was made to reopen the arbitration. The arbitration was reopened and a hearing set for April 20, 1977. The plaintiff, dissatisfied with his prior union representation during the grievance and arbitration process, insisted that he be represented at that stage only by his private counsel. As a result of a meeting with his counsel and the employer, the plaintiff was reinstated with full back pay based on the expert testimony obtained by private counsel.
 
 
 8
 The plaintiff sued the Union for unfair representation on June 16, 1977, more than 6 months following completion of the arbitration process. He alleged that the union had not properly represented him at the October 20, 1976, arbitration hearing and had failed to get plaintiff promptly reinstated when advised of the opinion of the new handwriting expert. District Judge Hogan dismissed the case as untimely under Ohio's 90-day limitations statute for vacation of arbitration awards, Sec. 2711.13, Ohio Rev.Code (1976).
 
 
 9
 II. SAME LIMITATIONS STATUTE APPLIES TO BOTH THE WRONGFUL
 
 DISCHARGE AND THE UNFAIR REPRESENTATION CLAIMS
 
 10
 In both cases, the employee appeals the dismissal of the case against the union on limitation grounds, and in the postal case Leach appeals the dismissal of the employer as well. In both cases the alleged wrongful discharge was addressed in the collectively bargained grievance and arbitration process and a final decision was rendered. If United Parcel Service v. Mitchell, supra, is applied retroactively--a question we will address momentarily--it is clear that the action against the employer in the postal case was barred by Ohio's 90-day arbitration statute. That was the holding of Mitchell.
 
 
 11
 The narrow holding in Mitchell covers the wrongful discharge case against the employer but does not necessarily cover the unfair representation case against the union, as Justice Stevens points out in his concurring opinion in Mitchell, 451 U.S. at 71, 101 S.Ct. at 1568. Since Mitchell, however, this Court has clearly held in Badon v. General Motors Corp., supra, that "the Mitchell rule also applies to Badon's unfair representation claim" because the same statute of limitations should be applied to both branches of the labor dispute, 679 F.2d at 98. Judge Martin's opinion for the Court in Badon relied on Gallagher v. Chrysler Corp., 613 F.2d 167, 168 (6th Cir.1980), which states the policy of this Circuit that the same statute of limitations should apply to both wrongful discharge and unfair representation cases. Although, as Justice Stevens points out in his concurring opinion in Mitchell, the two causes of action conceptually are based on somewhat different theories, Badon and Gallagher are the law of this Circuit until overruled or reversed, and they require application of the same limitations statute to both types of actions--the wrongful discharge claim against the employer and the unfair representation claim against the union.[2]III. RETROACTIVE APPLICATION OF MITCHELL
 
 
 12
 The rule of Mitchell should be applied retroactively to pending actions against employers and unions. The normal rule is that in civil cases a recent authoritative opinion interpreting the law should be applied to pending cases unless it represents a "clean break" with the past and unless in addition it would be fundamentally unfair or otherwise burdensome to so apply it, see Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355-56, 30 L.Ed.2d 296 (1971); United States v. Johnson, --- U.S. ----, 102 S.Ct. 2579, 2587 n. 12, 2595, 73 L.Ed.2d 202 (1982).
 
 
 13
 As Mitchell makes clear, the law on the limitations question in Sec. 301 wrongful discharge and unfair representation cases has been in a state of confusion for some time. This Circuit and other circuits, prior to Mitchell, had adopted various state statutes of limitations, depending on the peculiarities of the limitations law of the state in question and the arguments of counsel in the particular case. Although Smart v. Ellis Trucking Co., Inc., 580 F.2d 215, 219 (6th Cir.1978) ("action for wrongful discharge is not in the nature of a motion to vacate or modify an arbitration award") had rejected as not applicable the Michigan statute of limitations for setting aside arbitration awards, we do not believe that Mitchell represents the kind of "clean break" with past precedent contemplated in Chevron and Johnson, supra. Mitchell was simply a "clarification," an attempt to impose a single policy and a single rule in a legally chaotic situation. Mitchell was intended to resolve widespread confusion and conflict in the circuits concerning the applicable statute of limitations in these cases. We do not think that a "clean break" occurs every time the Supreme Court clarifies the law by resolving an issue on which there is circuit conflict and confusion. To so hold would reverse the regular common law rule, applied in Chevron and Johnson, that we should not normally have one law for old cases and another law for new cases. We note also that both this Circuit and others have assumed that the Mitchell rule applies retroactively; see Badon, supra, and Davidson v. Roadway Express, Inc., 650 F.2d 902 (7th Cir.1981). But see Singer v. Flying Tiger Line, Inc., 652 F.2d 1349 (9th Cir.1981) (Mitchell not retroactive). Compare Singer with Local 1020 v. FMC Corp., 658 F.2d 1285, 1289-90 (9th Cir.1981) (applying Mitchell retroactively).
 
 IV. ADDITIONAL ISSUES IN LEACH CASE
 
 14
 In the postal case, Leach v. United States Postal Service, the plaintiff presents additional arguments that the Ohio limitations statute on arbitration awards should not apply. We now consider those arguments.
 
 
 15
 A. The Effect of the Postal Reorganization Statute
 
 
 16
 Leach asserts that Mitchell is inapplicable because his claim against the United States Postal Service "is not of the 'hybrid type' claim pursuant to Sec. 301(a), LMRA, but is predicated upon an independent jurisdictional statute, 39 U.S.C. Sec. 409(b), which is in fact subject to an existing limitation period contained in 28 U.S.C." (Appellant's Brief at 16). The time limitation which Leach suggests should be applied pursuant to 39 U.S.C. Sec. 409(b), a provision of the Postal Reorganization Act adopted in 1970, is the general six year statute of limitations set forth in 28 U.S.C. Sec. 2401(a) governing civil actions brought against the United States. Leach bases this argument on the fact that his "claim is a contract claim asserted independently against" the federal government. (Appellant's Brief at 18).
 
 
 17
 This argument is incorrect. Section 2401(a) is not the applicable limitations statute. The grievance-arbitration process in the Postal Service came into the law in the Postal Reorganization Act of 1970. In passing the Act, Congress created "an independent establishment of the executive branch of the government of the United States," 39 U.S.C. Sec. 201, whose labor relations are patterned after the private sector and to which the National Labor Relations Act applies, 39 U.S.C. Sec. 1209. The national labor policy in favor of arbitration expressed in section 203(d) of the Labor Management Relations Act, 29 U.S.C. Sec. 173(d), is included in the Postal Reorganization Act. It authorized the collective bargaining parties to include "procedures culminating in binding third-party arbitration," 39 U.S.C. Sec. 1206(b). To enforce the provisions of the collective bargaining agreement, Congress enacted 39 U.S.C. Sec. 1208(b).
 
 
 18
 This Circuit and our sister circuits have uniformly held that 39 U.S.C. Sec. 1208(b) is an analogue of Section 301(a) of the Labor Management Relations Act of 1957[3] and have consistently applied Sec. 301 law to suits brought pursuant to 39 U.S.C. Sec. 1208(b). Malone v. United States Postal Service, 526 F.2d 1099, 1103-1104 (6th Cir.1975) (legislative intent of Postal Reorganization Act was to "bring postal labor relations within the same structure that exists for nationwide enterprise in the private sector"). Accord, National Association of Letter Carriers, AFL-CIO v. United States Postal Service, 590 F.2d 1171 (D.C.Cir.1978); Melendy v. United States Postal Service, 589 F.2d 256 (7th Cir.1978); Winston v. United States Postal Service, 585 F.2d 198 (7th Cir.1978); National Association of Letter Carriers v. Sombrotto, 449 F.2d 915, 919 (2nd Cir.1971).
 
 
 19
 Thus, since the courts have applied Sec. 301 case law to Postal Service labor relations cases arising under 39 U.S.C. Sec. 1208(b) and since it is from the Sec. 301 case law that Mitchell, supra, arose, Mitchell is clearly applicable to Leach's action against the Postal Service.
 
 
 20
 B. Leach's Assertion That His First Amendment Speech
 
 
 21
 Allegations Remove His Case From The Application
 
 
 22
 of UPS Is Without Merit.
 
 
 23
 Leach throws in the argument that since the alleged reason for his discharge from the Postal Service involved "an instance of speech" (mainly obscenities) and since speech is protected under the First Amendment of the United States Constitution, his case should be removed "from the restrictive application of the Mitchell principle" (Appellant's Brief 18-19). The Postal Service's answer to this argument is well-taken: "While he makes these contentions, Leach refuses to recognize, as he did in his arbitration proceeding, that it was his alcoholism which caused the misconduct which led to his discharge". (Appellee's Brief 17):
 
 
 24
 "Moreover, even assuming arguendo, that Leach's speech was protected by the First Amendment, he cites no case to support a conclusion that the statute of limitations in challenging his discharge is therefore extended. Carried to its logical conclusion, Leach's argument is that anyone who is discharged will be afforded a longer period within which to file suit if he exercises his right of free speech and shouts an obscenity as he leaves his workplace. Such an argument not only lacks support in the law, it defies common sense." (Appellee's Brief 18.)
 
 
 25
 C. Amendment of Answer to Assert Limitations Defense
 
 
 26
 The District Court did not err when it permitted defendants to amend their answers to assert the Mitchell statute of limitations defense. The scope of this Court's review of the District Court's decision to permit the Postal Service to amend its Answer is narrow. Review is limited to the question of whether the District Court abused its discretion in allowing the amendment. Hayden v. Ford Motor Company, 497 F.2d 1292 (6th Cir.1974).
 
 
 27
 Rule 15(a) of the Federal Rules of Civil Procedure permits the amendment of pleadings. The Rule provides, in pertinent part, that:
 
 
 28
 [A] party may amend his pleadings only by leave of court or by written consent of an adverse party; and leave shall be freely given when justice so requires. (emphasis added).
 
 
 29
 This Court, as well as others, has freely allowed the amendment of pleadings in the absence of substantial prejudice to the opposing party. Estes v. Kentucky Utilities Co., 636 F.2d 1131 (6th Cir.1980); Hageman v. Signal L.P. Gas, Inc., 486 F.2d 479 (6th Cir.1973); Head v. Timken Roller Bearing, 486 F.2d 870 (6th Cir.1973). Our review of the record indicates that defendants asserted the Mitchell statute of limitations defense shortly after Mitchell was decided. We do not find present here the kind of prejudice that prevents amendment, and therefore we do not find that the District Court erred in permitting the amendment raising the limitations defense.
 
 V. EQUITABLE TOLLING
 
 30
 Finally, the plaintiffs in both cases argue that general equitable considerations should appeal to the conscience of the Chancellor and should toll the running of the Mitchell statute of limitations. Their arguments here are similar to their retroactivity arguments. They basically assert that the Mitchell rule, even if applicable, comes as a surprise and that it is unjust to refuse to hear their claims. We have reviewed each record carefully seeking to find equitable considerations that would justify an exception to the Supreme Court policy of rapid settlement of labor disputes or would otherwise justify tolling. We do not find any such considerations present. Lawson's claim for damages is that the union failed to find, employ and present at the arbitration hearing a handwriting expert. Leach's basic claim is that the union failed to persuade his employer to give him another chance. Neither of these claims presents facts indicating bad faith or wrongdoing on the union's part or any other circumstances that compel the conscience of the Chancellor to extend, set aside or make an exception to the law.
 
 
 31
 Accordingly, the judgments of the District Courts in Appeal Nos. 81-3722 and 81-3540 are affirmed.
 
 
 32
 KEITH, Circuit Judge, concurring in part and dissenting in part.
 
 
 33
 I respectfully dissent from the Court's holding in No. 81-3722, Lawson v. Local 100. In its haste to dismiss Lawson's cause of action, the majority chooses to ignore some of the most important facts of this case. These facts are the crux of Lawson's cause of action. When viewed in the context of the relationship between a union and those it represents, they compel a different result.
 
 
 34
 First, the majority opinion notes in passing that "[n]either the Union nor the employee produced an expert witness" at the hearing before the Joint Conference or Committee on October 20, 1976. Ante at 253. What the majority fails to state is that the Union promised to produce a handwriting expert at the hearing. The district court expressly held in its July 21, 1980 Memorandum on the Defendant's Motion for Summary Judgment,
 
 
 35
 On a summary judgment motion it must be assumed that the Union agreed to obtain some expert examination, did not, and did not request a continuance of the hearing for that purpose.
 
 
 36
 Lawson's claim is that the Union made affirmative representations upon which he relied. Then the Union handled his claim in a perfunctory manner. Vaca v. Sipes, 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967). The majority's opinion completely ignores the underlying implication to be derived from these facts. That is, if the Union had not made the representation, Lawson himself would have been on notice that he might have to supply his own handwriting expert.
 
 
 37
 Second, the majority opinion states, "When the Union was informed of this new evidence, an effort was made to reopen the arbitration." Ante at 253. This statement is not supported by the record. In fact, the record contains evidence which supports Lawson's conclusion that the Union ignored him.
 
 
 38
 The affidavit of Paul H. Tobias, Lawson's private attorney, states that he made repeated attempts to obtain the Union's help in vindicating Lawson. He wrote Mason & Dixon Lines, Inc. (the Company) several times and sent copies of the correspondence to the Union. There was no response. He wrote the Union's attorney and attached copies of an expert's report which purported to show that Lawson was innocent. Still, there was no response. He communicated with President Kiser of the Union Local several times only to be told to talk to the Union's attorney. The record suggests that only after it became clear the Company was willing to reopen the hearing did the Union take any action. The Union was alerted to Lawson's need for help at least as early as December 2, 1976. It offered no help until April 1977.
 
 
 39
 The majority implies that Lawson's settlement was the reason why there was no new rehearing. He employed private counsel, the majority maintains, because he was "dissatisfied with his prior union representation during the grievance process." Ante at 253. One can hardly blame Lawson for insisting upon private counsel if the allegations of his complaint are true. He certainly should not be punished for refusing to trust his fate to the Union once more. Moreover, the Union had more than four months to fulfill its statutory duty. The Union told Lawson there was nothing else it or he could do under the collective bargaining agreement.
 
 
 40
 Third, the court's characterization of this as an action to vacate an arbitration award is incorrect. There is absolutely nothing in the record which indicates that Lawson wants to vacate the original arbitration award. He has no need to do so. The two parties in the arbitration proceeding were the Company and the Union. The latter purported to represent Lawson's interests. The Committee made an award to the Company. Subsequently, Lawson was vindicated. The Company agreed to reinstate Lawson with backpay and all other benefits. This was done without vacating any arbitration award, and the record suggests that it was done despite less than diligent efforts by the Union. The majority opinion fails to explain how the present action against the Union for breach of the duty of fair representation can be characterized as an action to vacate an arbitration award.
 
 
 41
 Lawson is requesting only that he be made whole for the Union's breach of its statutory duty. The facts in this case are different from the facts in United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). In Mitchell, Justice Rehnquist explained:
 
 
 42
 Respondent suggests Hines [v. Anchor Motor Freight, Inc., 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) ] actions might also be characterized as actions upon a statute, personal injury actions, or malpractice actions, all governed by a 3-year limitations period in New York, N.Y.Civ.Prac.Law Secs. 214(2), 214(5), 214(6). All of these characterizations suffer from the same flaw as the effort to characterize the action as one for breach of contract; they overlook the fact that an arbitration award stands between the employee and any relief which may be awarded against the company.
 
 
 43
 Id. 101 S.Ct. at 1564 n. 4.
 
 
 44
 There simply is no support for the proposition that a pure claim that a union breached its statutory duty should be treated as if it were a hybrid claim against the Union and the Company. This holding is especially untenable in those cases where no arbitration award stands between the grievant and legal relief. The cases cited by the majority were all hybrid actions in which litigation against both the Union and the Company was necessary to afford the grievant the relief requested.[1] In such cases, there might be some justification for applying the same statute of limitations against both defendants. There is no rationale, however, for applying this rule to claims like this one.
 
 
 45
 The majority relies on dicta in Judge Phillips' opinion for the Court in Gallagher v. Chrysler Corp., 613 F.2d 167 (6th Cir.), cert. denied, 449 U.S. 841, 101 S.Ct. 119, 66 L.Ed.2d 48 (1980). In Gallagher, Judge Phillips stated, "We hold that, in an action against an employer and a Union under LMRA, the same statute of limitations ordinarily should apply as to both defendants." Id. at 169 (emphasis added). Badon v. General Motors Corp., 679 F.2d 93 (6th Cir.1982), upon which the Court also purports to rely, was another claim against both an employer and a Union. In his opinion for the Court, Judge Martin reiterated the need for prompt resolution of labor disputes. The only case cited by Judge Martin for applying the same statute of limitations to both claims was Gallagher. See Badon, 679 at 98. As noted above, Gallagher expressly limits its holding to suits against both an employer and union.[2]
 
 
 46
 The majority's reliance on the national policy favoring prompt settlement of labor disputes is meaningless in this case. The underlying dispute has been settled without judicial intervention. Neither labor peace nor a dispute between an employer and employee is at issue. That is why it is anomalous to treat this suit as an action to vacate an arbitration award.
 
 
 47
 Furthermore, the Court's statement of "national policy" completely ignores competing national labor policies. As the Ninth Circuit has noted in its interpretation of Mitchell, "... uniformity of limitations periods, though desirable, is not the dominant consideration in selecting the appropriate statute of limitations. Rather, characterization of the claim is the touchstone." Christianson v. Pioneer Sand & Gravel Co., 681 F.2d 577, 579 n. 1 (9th Cir.1982).
 
 
 48
 The majority's attempt to treat this case as just another claim against a union and employer is unfortunate. As other circuits have discerned, the Supreme Court's characterization of the Mitchell case does not require that all cases brought under Sec. 301 of the LMRA be treated as an action to vacate an arbitration award. See, e.g., Hand v. International Chemical Workers Union, 681 F.2d 1308, 1313 (11th Cir.1982); Christianson, 681 F.2d at 579; Flowers v. Local 2602 of United Steelworkers, 671 F.2d 87, 91 (2d Cir.);[3] cert. granted, --- U.S. ----, 103 S.Ct. 442, 74 L.Ed.2d 599 (1982); Sear v. Cadillac Auto Co. of Boston, 654 F.2d 4, 5 (1st Cir.1981).
 
 
 49
 Because I believe this is a tort-like action for breach of a fiduciary duty, I would apply the most analogous state statute of limitations.[4] See International Union, UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); Smart v. Ellis Trucking Co., 580 F.2d 215 (6th Cir.1978), cert. denied, 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979). In Newton v. Local 801 Frigidaire Local of the International Union of Electrical Workers, 684 F.2d 401 (6th Cir.1982), our Court concluded that suits in Ohio based on breach of the duty of fair representation should be governed by the six-year statute of limitations for liabilities created by statute. Ohio Rev.Code Ann. Sec. 2305.07 (Page 1981).[5] If the six-year statute of limitations is applied, Lawson's claim against the union is timely and he is entitled to a trial on the merits.
 
 
 50
 The majority's opinion in this case illuminates the wisdom of Justice Black's concern for the "interests of the injured employee, the only one who has anything to lose" during arbitration proceedings. Vaca v. Sipes, 386 U.S. at 209, 87 S.Ct. at 926 (Black, J., dissenting). Because the majority's opinion unfairly penalizes the injured employee in this case, I respectfully dissent.
 
 
 
 [1]
 Mitchell applies a 90-day state limitations statute governing actions to vacate arbitration awards as the federal limitations analogue for actions against employers for wrongful discharge. It does so on the policy ground that "one of the leading federal policies" in labor law is the need for "relatively rapid disposition of labor disputes." 451 U.S. at 63, 101 S.Ct. at 1564
 
 
 [2]
 Even under Justice Stevens' rationale, it would appear that the 6 month statute for unfair labor practices found in Sec. 10(b) of the Act, 29 U.S.C. Sec. 160(b) would bar the actions against the unions in both cases because neither were filed within 6 months
 
 
 [3]
 Section 1208(b) of the Postal Reorganization Act of 1970, 39 U.S.C. Sec. 1208(b), provides as follows:
 Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy.
 Section 301(a) of the Labor Management Relations Act of 1957 ("LMRA"), 29 U.S.C. Sec. 185(a), provides as follows:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 [1]
 In Gallagher v. Chrysler Corp., 613 F.2d 167 (6th Cir.), cert. denied, 449 U.S. 841, 101 S.Ct. 119, 66 L.Ed.2d 48 (1980), the appellant charged that Chrysler had discharged him without good cause and that his union, by withdrawing his grievance before arbitration, had failed to represent him in good faith. Similarly, appellant Badon in Badon v. General Motors Corp., 679 F.2d 93 (6th Cir.1982) claimed that General Motors wrongfully denied him pension benefits and that the United Auto Workers had failed to fairly represent him in the processing of his grievances
 
 
 [2]
 In Badon, Judge Martin noted: "It would be contrary to sound judicial policy to encourage actions to recover only the costs of litigation where no underlying right can any longer be vindicated in the action." 679 F.2d at 98. Until today, this language seemed to be strong support for a well-reasoned proposition. That is, where the statute of limitations has run on an employer and the claim was brought against both the employer and the union, it would be absurd to allow the claim to proceed against the union since all the plaintiff can recover are his or her litigation fees. There is no reason to allow the plaintiff to generate needless litigation expenses. However, that is not the claim before us now. There is an underlying right which can be vindicated, Lawson's attorney fees which were made necessary by the alleged perfunctory representation by the Union
 
 
 [3]
 In Flowers v. Local 2602 of United Steelworkers, 671 F.2d 87 (2d Cir.1982), the Second Circuit refused to treat a duty of unfair representation claim against a union as an action to vacate an arbitration award. Rather the Court noted that "an action for breach of the union's duty fairly to represent its members at arbitration proceedings is closely analogous to an action for attorney malpractice." Id. at 91. The Supreme Court, in granting the writ of certiorari, also agreed to address the question of whether the statute of limitations against the employer in hybrid actions automatically applies to a duty of fair representation claim against the union. --- U.S. ----, 103 S.Ct. 442, 74 L.Ed.2d 599 (1982)
 The Supreme Court granted review in another case which presents similar issues. DelCostello v. International Brotherhood of Teamsters, 679 F.2d 879 (4th Cir.) (unpublished opinion), cert. granted, --- U.S. ----, 103 S.Ct. 442, 74 L.Ed.2d 599 (1982). In DelCostello, the Fourth Circuit applied the same statute of limitations to both the claims of the employer and the Union. It applied a thirty-day limitations period rather than the six-month period of Sec. 10(b) of the National Labor Relations Act.
 
 
 [4]
 In Newton v. Local 801 Frigidaire Local of the International Union of Electrical Workers, 684 F.2d 401 (6th Cir.1982), Judge Phillips, writing for a panel of himself and Judges Merritt and Jones, expressly considered and refused to apply the six-month statute of limitations provisions applied in Badon. It is, therefore, surprising that the majority would suggest that the alternative to the three-month limitations period is the six-month period of Sec. 10(b) of the NLRA
 This case is more analogous to Newton than Badon. Newton and the instant case were both breach of duty of fair representation cases against a union. Badon was a case against both an employer and the union. The court applied section 10(b) in Badon because Michigan appeared to have no appropriate state statute of limitations for actions to vacate an arbitration award.
 Judge Krupansky's opinion for the Court in Pitts v. Frito-Lay, 700 F.2d 330 at 333 n.3 (6th Cir.1983), supports this view. He correctly notes that Badon's holding is that "in Michigan the courts must apply a federal statute of limitations to Sec. 301 actions" (emphasis in original). But Ohio has a limitations period for actions to vacate an arbitration award thus making the six-month statute of limitations of Sec. 10(b) wholly inapplicable to either Lawson's or Leach's claim.
 
 
 [5]
 Ohio Rev.Code Ann. Sec. 2305.07 (Page 1981) provides: "Except as provided in section 1302.98 of the Revised Code, an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued."
 Another solution in light of the Supreme Court's holding in United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981) and Justice Steven's dissenting opinion in that case would be to apply Ohio's shorter malpractice statute of limitations (one year). Ohio Rev.Code Ann. Sec. 2305.11 (Page 1981). In either case, Lawson's action would be timely.