**Jeffrey T. WOOLLETT and Amanda S. Woollett, Plaintiffs,**

v.

**BANKERS LIFE CO., et al., Defendants.**

Civ. No. 82–72562.

United States District Court, E.D. Michigan, S.D.

Sept. 30, 1983.

Nancy L. Kahn, Southfield, Mich., for plaintiffs.

James E. Baiers, Detroit, Mich., for Data 100 & Sycor.

Kim A. Siegfried, Allen Park, Mich., for United Steelworkers.

Sharon McPhail-West, Detroit, Mich., for Bankers Life.

John W. Conlin, Ann Arbor, Mich., for Nix.

## MEMORANDUM OPINION

RALPH M. FREEMAN, Senior District Judge.

This action is an employee suit against, *inter alia,* the employer and a union, alleging the employer's breach of a collective bargaining agreement and the union's breach of its duty of fair representation with respect to the ensuing grievance proceeding. 29 U.S.C. § 185; *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The five count complaint asserts other causes of action which the Court will address. The complaint was filed on June 21, 1982 in Wayne County Circuit Court and was removed to this Court on July 12, 1982 by defendant Northern Telecom, Inc.

The plaintiffs in this litigation are Jeffrey T. Woollett and his wife Amanda S. Woollett. Jeffrey Woollett was employed by defendant Sycor, Inc. from May 8, 1978 to May 31, 1979 at which time Sycor, Inc. merged into Data 100 Corp. and, at the same time, changed its name to Northern Telecom Systems Corp. (Northern Telecom). Mr. Woollett continued in the employ of Northern Telecom until December 17, 1979. Amanda Woollett was employed by defendant Sycor, Inc. from June 27, 1978 to May 31, 1979, and following the merger, remained in the employ of Northern Telecom until December 10, 1979. While in the employ of Sycor, and subsequently Northern Telecom, plaintiffs were members of the United Steelworkers, Local 8579 (Union). The Union, during the time of plaintiffs' employment, had a collective bargaining agreement with Sycor and subsequently Northern Telecom. Pursuant to the agreement, Sycor and Northern Telecom (hereinafter simply Northern Telecom) agreed to provide medical, hospitalization and disability insurance to their employees and their families. Northern Telecom then contracted with defendant Bankers Life Co. to provide the medical and hospitalization insurance coverage called for under the collective bargaining agreement.

On August 19, 1978, Jeffrey Woollett married Amanda Long. Subsequent to the marriage, Mrs. Woollett became pregnant and later gave birth to twin daughters. Also subsequent to the marriage, Mrs. Woollett required extensive medical treatment and hospitalization for arteriovenous malformation of the brain. The plaintiffs submitted their medical and hospital bills to Banker's Life seeking total reimbursement for the medical and hospital costs incurred as a result of pregnancy and the arteriovenous malformation of the brain. Bankers Life refused to reimburse plaintiffs for all costs incurred.

Plaintiffs contacted the Union and informed them of their problem with Bankers Life. On or about March 5, 1979, the Union filed a grievance on behalf of Amanda Woollett "protesting the refusal of the employer to pay A & S benefits and medical bills relating to medical complications following the birth of her child." (affidavit of John Claya). Plaintiffs were represented by John Claya, counsel for the Union, during the grievance proceedings in this matter. At one point in these proceedings, following the exhaustion of the initial grievance procedures, this matter was scheduled for arbitration on October 18, 1979. Plaintiffs claim that arbitration was adjourned when the Union and Northern Telecom entered into a settlement agreement pursuant to which Northern Telecom agreed to reimburse plaintiffs in full for the medical and hospital expenses incurred.

The Union contends that arbitration was adjourned because it wanted to *attempt* to settle this matter. The Union contends that the collective bargaining agreement precludes arbitration of matters relating to the provisions of any insurance program.

Plaintiffs claim that when it became apparent that the "settlement" would not be honored, they requested arbitration. At this point, after some correspondence between the Union and Northern Telecom, the Union informed plaintiffs that this matter would not be taken to arbitration. Subsequent to this time, plaintiffs commenced this action.

Count I of the complaint is a breach of contract claim against Bankers Life under a third party beneficiary theory. Count II is a breach of collective bargaining agreement claim against Northern Telecom. Count III is a breach of contract claim against Northern Telecom for breach of the purported "settlement contract" agreed to prior to the adjournment of the arbitration scheduled for October 18, 1979. Count IV is a breach of fair representation claim against the Union. Count V is an intentional infliction of emotional distress claim against Bankers Life, Northern Telecom, and Susan Nix, who is allegedly an agent or employee of Northern Telecom and Bankers Life.

On January 31, 1983, Northern Telecom filed a motion for summary judgment claiming that Counts II, III and V are time-barred by the six month limitations period set forth in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), as applied to § 301 actions, 29 U.S.C. § 185, in Michigan by the Sixth Circuit in *Badon v. General Motors Corp.*, 679 F.2d 93 (6th Cir. 1982). On February 1, 1983, the Union filed a motion urging the granting of summary judgment in its favor on Count IV on the same grounds. On April 22, 1983, defendant Susan Nix filed a motion seeking the granting of summary judgment in her favor on Count V on the same grounds. Plaintiffs responded to the motions of Northern Telecom and the Union on April 3, 1983 and to the motion of Susan Nix on April 28, 1983. Argument was scheduled for and heard on May 4, 1983 at which time this matter was taken under advisement.

█ The question presented by these motions with respect to Counts II and IV concerns the statute of limitations for employee suits against the employer and union, alleging the employer's breach of the collective bargaining agreement and the Union's breach of its duty of fair representation. 29 U.S.C. § 185; *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Northern Telecom assumes, without addressing the issue, that the statute of limitations applicable to § 301 actions, such as Count II, is also applicable to the straight breach of contract action asserted against it in Count III and the intentional tort asserted against it in Count V. The Court notes that each count in the complaint alleges a separate cause of action. Neither Count III nor Count V assert a claim for breach of the collective bargaining agreement. Therefore, the six month limitations period spelled out in *Badon* cannot possibly apply to Counts III and V. For these reasons, Northern Telecom's motion for summary judgment on Counts III and V will be denied.

The motion of defendant Susan Nix suffers from the same flaw. Plaintiffs allege that she committed an intentional tort, intentional infliction of emotional distress, in Count V. Nix contends that this cause of action is barred by the six month limitations period per *Badon*. As noted above with respect to the summary judgment motion of Northern Telecom, *Badon* is simply not applicable to Count V. Therefore, defendant Nix's motion for summary judgment will be denied.

Thus, the only issue remaining for the Court is the applicability of the holding in *Badon* to Counts II and IV. *Badon* held that § 301 actions arising in Michigan are subject to a six month limitations period adopted from § 10(b). The issue addressed during the arguments and in some of the briefs is the effect of the Sixth Circuit's decision in *Pitts v. Frito-Lay, Inc.*, 700 F.2d 330 (6th Cir.1983) (decided February 24, 1983) on the case at hand. *Pitts* held that

the "six-month statute of limitations adopted in *Badon* for suits of this nature should not be given retroactive effect." *Id.* at 334. However, the Sixth Circuit had held, one month earlier, that *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the case on which the *Badon* court relied, applied retroactively. *Lawson v. Truck Drivers, Chauffeurs & Helpers, Local 100,* 698 F.2d 250 (6th Cir. 1983) (decided January 17, 1983). Both *Pitts* and *Lawson* applied the principles set forth in *Chevron Oil Co. v. Hudson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) in determining retroactivity.

■ Complicating matters further in this case is the very recent decision of the Supreme Court in *DelCostello v. International Brotherhood of Teamsters,* —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In *DelCostello,* the Supreme Court held that the provisions of § 10(b) of the National Labor Relations Act establishing a six month limitations period for the filing of unfair labor practice charges with the National Labor Relations Board should be borrowed and applied to actions alleging the employer's breach of the collective bargaining agreement and the union's breach of its duty of fair representation.[1] In an earlier decision, *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the Supreme Court held that the appropriate limitations period for an employee's claim against the employer was to be found by looking to the state statute of limitations for actions seeking to vacate arbitration awards rather than by looking to the state statute of limitations for actions alleging breach of contract. The Court in *DelCostello* was quick to note the limited review of this issue afforded them by the questions posed in *Mitchell:*

> First, our holding was limited to the employee's claim against the employer; we did not address what *state* statute should govern the claim against the union. Second, we expressly limited our consideration to a choice between two state statutes of limitations; we did not

address the contention that we should instead borrow a *federal* statute of limitations, namely § 10(b) of the National Labor Relations Act, 28 USC § 160(b). These cases present these two issues. We conclude that § 10(b) should be the applicable statute of limitations governing the suit, both against the employer and against the union.

103 S.Ct. at 2285 (footnotes omitted). Thus, as a result of *DelCostello,* § 301 actions accruing after June 8, 1983, such as is alleged in Counts II and IV, must be brought within six months of the accrual of the cause of action or be time barred.

In deciding whether plaintiff's claims in the case at hand are time barred, the Court must first determine the impact of *DelCostello* on *Badon* and *Pitts.* The Court is called on to address two questions in evaluating the impact of *DelCostello* on *Badon* and *Pitts.* First, does *DelCostello* alter the statute of limitations applicable to actions accruing prior to *DelCostello* and post-*Badon* brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, that arise in Michigan? Second, is *DelCostello* to be applied retroactively?

*Badon* was the Sixth Circuit's first review of the Supreme Court's decision in *Mitchell* with respect to causes of action arising in Michigan. In *Badon,* the Sixth Circuit surveyed Michigan law in compliance with *Mitchell's* directive to borrow the state statute of limitations for vacation of arbitration awards. When the Sixth Circuit discovered that Michigan does not have a limitations period for the vacating of labor arbitration awards, it followed the lead of Justice Stewart's concurrence in *Mitchell,* 451 U.S. at 65, 101 S.Ct. at 1565, urging the adoption of the six month limitations period in § 10(b) for the filing of unfair labor practice charges. Thus, in *Badon,* the Sixth Circuit held that actions *in Michigan* alleging an employer's breach of a collective bargaining agreement and the union's breach of its duty of fair representation

---

1. The *Badon* decision is not cited in *DelCostello.*

were to be governed by a six month limitations period borrowed from § 10(b).

The conclusion in *DelCostello* that a six month limitations period adopted from § 10(b) is applicable to § 301 actions is identical to the conclusion reached in *Badon*. *Badon* reached the conclusion that the six month limitations period found in § 10(b) was applicable after finding that there was no relevant authority in Michigan establishing a limitations period for actions seeking to vacate arbitration awards. *DelCostello,* on the other hand, reached the same conclusion after rejecting the *Mitchell* analogy to actions seeking to vacate arbitration awards. Therefore, the Court concludes that *DelCostello* does not alter the conclusion of the Sixth Circuit in *Badon*.

■■■ The question of the retroactive application of *DelCostello* was not addressed in that case. The Court did apply the six month limitations period to each of the two cases before it. Such application, however, is not a ruling on the appropriateness of retroactive application.[2] The general rule is that, in civil cases, a decision interpreting the law should be applied retroactively unless "it represents a 'clean break' with the past and unless in addition it would be fundamentally unfair or otherwise burdensome to so apply it." *Lawson, supra,* 698 F.2d at 254 (*citing Chevron Oil Co. v. Hudson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971); *United States v. Johnson,* 457 U.S. 537, 550 n. 12, 563, 102 S.Ct. 2579, 2587 n. 12, 2595 (1982)). *Chevron Oil* set forth the three factors to be considered when the retroactive application of a decision is challenged. 404 U.S. at 106–07. This Court, however, need not apply the *Chevron Oil* test to *DelCostello*. Because the Sixth Circuit in *Pitts* concluded that the adoption of the six month limitations period from § 10(b) in *Badon* satisfied the *Chevron Oil* test for prospective application, and because the Supreme Court in

*DelCostello* adopted the same six month limitations period from § 10(b), this Court concludes that it is compelled to find that *DelCostello* is not to be applied retroactively.[3] In *Pitts,* the Sixth Circuit was aware that the Supreme Court had granted certiorari in two cases to consider the suitability of applying the limitations period in § 10(b) to § 301 actions.

The Supreme Court in *Mitchell* was simply "called upon to determine which state statute of limitations period should be borrowed and applied to an employee's action against his employer under § 301." *United Parcel Service, Inc. v. Mitchell, supra,* 451 U.S. at 57, 101 S.Ct. at 1561 (emphasis added). Accordingly, this Court concluded that *Mitchell* does not represent "the kind of 'clean break' with past precedent contemplated in *Chevron*." *Lawson, supra,* at 254.

In *Badon,* however, this Circuit decided, notwithstanding the foregoing precedent directing utilization of a state limitations period, that in Michigan the courts must apply a *federal* statute of limitations to § 301 actions. *Badon* therefore is not a mere clarification of an established rule nor was it clearly foreshadowed by other decisions in this area of the law. Rather, *Badon* creates a new rule of law and represents a clean break with past precedent.

The Court would observe that the Supreme Court has recently granted certiorari in two cases to consider the suitability of applying § 10(b) to § 301 actions. *DelCostello v. International Brotherhood of Teamsters,* 679 F.2d 879 (4th Cir.), *cert. granted* —— U.S. ——, 103 S.Ct. 442, 74 L.Ed.2d 599 (1982); *Flowers v. Local 2602, United Steelworkers of America* [671 F.2d 87], *supra.* This, of course, does not alter our characterization of *Badon* as an unforeseen development in the law.

---

**2.** In *Badon,* the Sixth Circuit applied the newly adopted six month limitations period to the facts of that case. The court later, in *Pitts,* determined that *Badon* should not be applied retroactively.

**3.** *Badon* remains applicable to causes of action arising in Michigan which have accrued post-*Badon.*

700 F.2d at 333 n. 3. Therefore, the Court concludes that *DelCostello* is not to be applied retroactively.[4]

The conclusion that *DelCostello* and *Badon* are not to be applied retroactively does not resolve the question of the appropriate limitations period for the case at hand. *Pitts* suggested that because *Badon* was to be given prospective application only, the previous line of authority in this Circuit finding Michigan's three-year limitations period for tort actions was applicable. 700 F.2d at 332 (*citing Echols v. Chrysler Corp.,* 633 F.2d 722 (6th Cir.1980); *Gallagher v. Chrysler Corp.,* 613 F.2d 167 (6th Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 119, 66 L.Ed.2d 48 (1980); *Smart v. Ellis Trucking Co.,* 580 F.2d 215 (6th Cir.), *cert. denied,* 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1978)). *Pitts* would control the disposition

of this matter were it not for *Lawson, supra.* In the absence of *Lawson,* this Court could conclude that a three year limitations period applied to actions accruing pre-*Mitchell.*[5]

The task for this Court is to attempt to reconcile the holdings of *Lawson* and *Pitts.* As noted earlier, the holding in *Badon* was a direct result of the Supreme Court's decision in *Mitchell.* In *Badon,* the Sixth Circuit adopted the six month limitations period in 10(b) after determining that it was "left without guidance by the State of Michigan with respect to the time period within which actions to vacate labor arbitration awards must be brought." 679 F.2d at 99. In effect, the court concluded that *Mitchell* compelled the adoption of § 10(b) to § 301 actions arising in Michigan.[6] In

---

**4.** In *DelCostello,* there is support for the Sixth Circuit's position that the decision to draw on a federal statute of limitations for a different but closely related cause of action, rather than on an analogous state statute of limitations, represents a departure from the general practice of the federal judiciary.

> We stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy. See, e.g., *Mitchell,* 451 U.S., at 61, n. 3, 101 S.Ct., at 1563, n. 3. On the contrary, as the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remains the norm for borrowing of limitations periods. Nevertheless, when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law.

103 S.Ct. at 2294.

In *Curtis v. International Brotherhood of Teamsters, Local 299,* 716 F.2d 360 (6th Cir. 1983), the Sixth Circuit did cite *DelCostello.* In *Curtis,* plaintiff filed an action against his employer and his union under § 301. Both defendants filed a motion for summary judgment on limitations grounds. Plaintiff failed to respond to the motions and the district court judge granted the motions for that reason. The Sixth Circuit affirmed the lower court and made the following observation about *DelCostello* before quoting from the opinion. "We

also note that the disposition in this case would have been consistent with the recent Supreme Court opinion in *DelCostello ....*" Id. at 361. This reference, in dictum, cannot support an inference that the Sixth Circuit intends *DelCostello* to be applied retroactively.

**5.** Plaintiffs' cause of action accrued pre-*Mitchell,* as will be developed.

**6.** Once the *Badon* court recognized that Michigan law provided no guidance in light of *Mitchell,* the court turned to *Mitchell* to determine if the Supreme Court had foreclosed consideration of all other limitations periods. In adopting the state limitations period applicable to suits seeking to vacate arbitration awards, *Mitchell* foreclosed application of the state statute of limitations for breach of contract actions, for personal injury actions, and for malpractice actions. 451 U.S. at 62 n. 4, 101 S.Ct. at 1564 n. 4. While the opinion of the court in *Mitchell* acknowledged the limited choice it faced, 451 U.S. at 60 n. 2, 101 S.Ct. at 1562 n. 2, three justices wrote separate opinions addressing alternative solutions. Justice Blackmun wrote a brief concurrence.

> I join the Court's opinion because I am persuaded that the Court has made the correct choice between the two state law alternatives presented by the parties. As the Court observes, the applicability of § 10(b) of the National Labor Relations Act, 29 USC § 160(b), was never pressed by either party, and was not considered by the Court of Appeals. Although I find much that is persuasive in Justice Stewart's analysis, resolution of the § 10(b) question properly should await the development of a full adversarial record.

451 U.S. at 64–65, 101 S.Ct. at 1564–65. Justice Stewart, concurring, suggested adopting

*Lawson,* the decision preceding *Pitts,* however, the Sixth Circuit concluded that *Mitchell* applies retroactively. If *Mitchell* applies retroactively, and if its application to § 301 actions arising in Michigan necessitates adopting a six month limitations period, how then can *Pitts* be reconciled with *Lawson?*

In *Pitts,* the court noted that the prospective application of *Badon* did not "conflict" with the decision in *Lawson* to apply *Mitchell* retroactively.

> ³ This Court has recently determined, employing the *Chevron* analysis, that *United Parcel Service v. Mitchell* should be applied retroactively. *Lawson v. Truck Drivers, Chauffeurs & Helpers, Local Union 100,* 698 F.2d 250 (6th Cir. 1983). The conclusion arrived at in the instant matter is not in conflict with *Lawson.* In *Mitchell,* as this Court observed in *Lawson, supra,* at 332, the Supreme Court was merely clarifying a rule—a rule which had been established 15 years earlier in *International Union, UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). *Hoosier Cardinal,* held that "the timeliness of a § 301 suit . . . is to be determined, as a matter of federal law, by reference to the appropriate *state* statute of limitations." *Id.* at 704–705, 86 S.Ct. at 1112–13 (emphasis added). The Supreme Court in *Mitchell* was simply "called upon to determine which *state* statute of limitations period should be borrowed and applied to an employee's action against his employer under § 301." *United Parcel Service, Inc. v. Mitchell, supra* at 57, 101 S.Ct. 1561 (emphasis added). Accordingly, this Court concluded that *Mitchell* does not represent "the kind of 'clean break' with past precedent contemplated in *Chevron.*" *Lawson, supra,* at 254.

In *Badon,* however, this Circuit decided, notwithstanding the foregoing precedent directing utilization of a state limitations period, that in Michigan the courts must apply a *federal* statute of limitations to § 301 actions. *Badon* therefore is not a mere clarification of an established rule nor was it clearly foreshadowed by other decisions in this area of the law. Rather, *Badon* creates a new rule of law and represents a clean break with past precedent.

The Court would observe that the Supreme Court has recently granted certiorari in two cases to consider the suitability of applying § 10(b) to § 301 actions. *DelCostello v. International Brotherhood of Teamsters,* 679 F.2d 879 (4th Cir.) *cert. granted* —— U.S. ——, 103 S.Ct. 442, 74 L.Ed.2d 599 (1982); *Flowers v. Local 2602, United Steelworkers of America, supra.* This, of course, does not alter our characterization of *Badon* as an unforeseen development in the law.

For the foregoing reasons, the Court concludes that the propriety of affording *Badon* retroactive effect, the issue presented in the matter *sub judice,* is distinguishable from the issue of applying *Mitchell* retroactively and it follows, a fortiori, that the instant case is distinguishable from *Lawson.*

700 F.2d at 333 n. 3. While the *Pitts* court thus distinguished the *retroactivity analysis* in *Lawson,* it failed to follow its mandate. The court did not at all attempt to ascertain the effect of the retroactive application of *Mitchell* on the cause of action of the plaintiff in *Pitts.* The decision in *Pitts* that a three year statute of limitations applied to § 301 actions accruing pre-*Mitchell* implicitly assumes that *Mitchell* is not retroactive.

 Thus, the conclusion is inescapable that *Lawson* and *Pitts* are irreconcilable. Because the *Pitts* analysis is incomplete, the

the six month limitations period in section 10(b). 451 U.S. at 65–71, 101 S.Ct. at 1565–68. The opinion of the Court does not confront Justice Stewart's recommendation. However, as has been well documented, Justice Stewart's position served as the basis for the decisions in *Badon* and *DelCostello.* The final opinion in

*Mitchell* was drafted by Justice Stevens and recommended adopting the state statute of limitations for malpractice actions. 451 U.S. at 71–76, 101 S.Ct. at 1568–71. This position was considered and rejected by the Court. 451 U.S. at 62 n. 4, 101 S.Ct. at 1564 n. 4.

Court concludes that the *Pitts* decision represents an anomaly in the line of decisions reviewing the statute of limitations issue in § 301 actions.[7] Therefore, because retroactive application of *Mitchell* to § 301 actions arising in Michigan results in the application of a six month limitations period, this Court concludes that plaintiffs' cause of action in the case at hand is subject to a six month limitations period.

The next inquiry for the Court is determining when the cause of action accrued. Pinpointing the precise date of accrual is not necessary because plaintiffs acknowledge that application of a six month limitations period would bar their § 301 action.[8] Plaintiffs, however, contend that the limitations period was tolled because the § 301 cause of action against the Union was fraudulently concealed from them.

Plaintiffs were represented by John Claya, counsel for the Union, during the grievance proceedings concerning non-payment of certain of Amanda Woollett's medical and hospital expenses. Mr. Claya avers in his affidavit that he informed plaintiffs that the Union would not reschedule this matter for arbitration after he learned that Northern Telecom would not settle the dispute. Mr. Claya avers that he learned that Northern Telecom would not settle the dispute from a letter dated March 24, 1980 from Northern Telecom's attorney. At the same time that he informed plaintiffs that the Union would not re-schedule arbitration, he informed them that he would seek authorization from the Union to sue Bankers Life on their behalf for the unpaid medical and hospital expenses. In March or April of 1981, Mr. Claya was informed that the Union would not grant such authorization. Mr. Claya avers that he passed this information on to plaintiffs shortly thereafter and, at the same time, offered to file a suit against Bankers Life if plaintiffs would forward him a retainer. Mr. Claya further avers that some months later, a retainer was forwarded. On February 8, 1982, Jeffrey Woollett sent a letter to John Claya apparently severing the attorney-client relationship. (Plaintiffs' Brief in Response, Ex. C.)

Plaintiffs' fraudulent concealment argument is set forth as follows:

During the period of Claya's representation of Plaintiffs he was aware of the possibility that the Woolletts could make a fair representation claim against the Steelworkers Union. Claya expressed this concern in a letter to the Steelworkers Union dated February 25, 1981 as follows:

"... I am disturbed by the possibility of a fair representation lawsuit against the Union since it might look as though we have abandoned the Woolletts once we lost the bargaining unit."

(See Exhibit D).

During Claya's representation of the Plaintiffs he had an *absolute duty* to inform them as to their potential causes of action relating to this matter. Instead the possibility of a fair representation action against the Steelworkers Union was concealed from them. This conceal-

---

**7.** The only other alternative is to hold that *Mitchell* is not to be applied retroactively to § 301 actions arising in Michigan. Such a conclusion, however, directly conflicts with *Lawson*. Faced with a choice between *Lawson* and *Pitts,* the Court concludes that the failure of the *Pitts* court to address the retroactive application of *Mitchell* precludes reliance on *Pitts.*

**8.** As indicated in the affidavit of John Claya, counsel for the Union who represented plaintiffs throughout the grievance proceedings, plaintiffs were informed in either March or April of 1980 that arbitration would not be rescheduled. At this point the plaintiffs were aware that the Union would not pursue the remedies available under the collective bargain-

ing agreement. At the same time, however, John Claya indicated that he would attempt to convince the Union to authorize him to sue Bankers Life on behalf of the plaintiffs. Thus, the Union had not yet ceased to represent plaintiffs. In March or April of 1981, the Union informed Mr. Claya that it would not grant authorization for such a suit. Shortly thereafter, this decision was communicated to plaintiffs by Mr. Claya. Thus, in March or April of 1981, plaintiffs were aware that the Union would no longer represent them in their attempt to be reimbursed for Amanda Woollett's medical and hospital expenses. The cause of action accrued at this point.

ment served to toll the statute of limitations until the attorney/client relationship between Plaintiffs and John Claya, counsel for the Steelworkers Union was severed. This occurred on either June 2, 1982 (Exhibit B) or February 8, 1982 (Exhibit C). In either case this action was filed within six months thereafter and is therefor timely.

(Plaintiffs' Brief in Response, p. 9).

Plaintiffs have cited no authority in support of their fraudulent concealment argument. In *Gee v. CBS, Inc.,* 471 F.Supp. 600 (E.D.Pa.), *aff'd.,* 612 F.2d 572 (3d Cir.1979), the doctrine of fraudulent concealment was addressed:

> Our second line of inquiry involves the doctrine of "fraudulent concealment." Fraudulent concealment does not depend, as do *Holmberg* [*v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946)] and *Nesbitt* [*v. Erie Coach Company,* 416 Pa. 89, 204 A.2d 473 (1964)], on the underlying cause of action—here the 1923–1933 transactions—being inherently fraudulent. Rather, it requires independent acts of "fraudulent concealment" of the events or circumstances constituting the underlying cause of action, irrespective of whether those underlying events are inherently fraudulent or not. *See* Dawson, *Fraudulent Concealment and Statutes of Limitations,* 31 Mich.L.Rev. 875 (1933). This doctrine, as explicated by Judge Goodrich in *Overfield v. Pennroad Corporation,* 146 F.2d 889, 896 (3d Cir.1944), finds expression in Pennsylvania case law:
>
> > The plaintiffs say, however, that there was concealment and such concealment would toll the running of the statute under Pennsylvania law. We are confronted at the outset, however, with the proposition, laid down over and over again in the Pennsylvania decisions that the concealment which tolls the statute must be an affirmative, independent act of concealment; mere silence or nondisclosure, even by corporate officials is not

enough. The time at which it takes place is immaterial: whether before, contemporaneous with or subsequent to the act complained of. But independent act, "affirmative efforts to divert, mislead, or prevent discovery" there must be. We do not see here any such conduct independent of the very things about which the plaintiffs complain. The plaintiffs complain of investments and say that they were made with an eye not to Pennroad's interest, but that of the Pennsylvania Railroad. But the sum and substance of that complaint is a series of transactions which alone make up the gravamen of the alleged offenses. We see no independent acts, designed to "divert, mislead, or prevent discovery."

471 F.Supp. at 623–24.

On the record now before the Court, there is no suggestion that Mr. Claya affirmatively attempted to conceal a possible cause of action against the Union. John Claya initiated the attorney-client relationship solely for the purpose of bringing suit against Bankers Life. Plaintiffs remained free at all times to refuse Mr. Claya's offer and seek other representation.

Further, plaintiffs' argument asks this Court to assume that Mr. Claya's actions as a private attorney are attributable to the Union. Mr. Claya's offer to file suit solely against Bankers Life was made *after* he informed plaintiffs that the Union would not authorize such a suit. At this point, Mr. Claya was acting as a private attorney, a capacity separate and distinct from his capacity as counsel for the Union. There is nothing in the record now before the Court which suggests that Mr. Claya's offer, in March or April of 1981, to represent plaintiffs in an action to be filed against Bankers Life was made in anything but his capacity as an attorney in private practice.[9] Thus, the Court concludes that the statute of limitations was not tolled in this matter.

Therefore, because plaintiffs' § 301 action against Northern Telecom, Count II,

**9.** In contrast to his position as counsel for the Union.

and against the Union, Count IV, was filed more than six months after the action accrued, defendant Northern Telecom's motion for summary judgment with respect to Count II and defendant Union's motion for summary judgment with respect to Count IV will be granted. The § 301 action against both defendants is time barred. An appropriate order shall be submitted.