444 F.2d 514
 Silas S. DARLING and Mary J. Darling, Plaintiffs-Appellees,
v.
Charlotte SCHEIMER and Leonard B. Frazier, Defendants-Appellants.
Silas S. DARLING and Mary J. Darling, Plaintiffs-Appellants,
v.
The FISHING VESSEL "MISS JUDY," etc., et al., Defendants-Appellees.
 No. 24567.
 No. 24568.
 United States Court of Appeals, Ninth Circuit.
 June 22, 1971.
 Rehearing Denied in No. 24567 July 20, 1971.
 
 Jack G. Knebel (argued), of McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for Charlotte Scheimer and Leonard B. Frazier.
 Peter N. Swan (argued), Eugene, Or., for Silas S. and Mary J. Darling.
 Before MADDEN,* Judge of the United States Court of Claims, and BROWNING and KILKENNY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Two fishing boats, the Sea Wolf and the Miss Judy, collided off the coast of California. The Sea Wolf sank, a total loss. The owners of the Miss Judy appeal from the trial court's finding that their vessel was solely at fault. The owners of the Sea Wolf cross-appeal, challenging the adequacy of the damage award.
 
 
 2
 * Miss Judy's efforts to attribute fault to the Sea Wolf rest ultimately upon the contention that the Sea Wolf was under a duty to post a lookout.
 
 
 3
 The undisputed facts are that the Sea Wolf, together with other boats of a fishing fleet, had shut off their engines for the night and were drifting 35 miles off the coast in open seas 1600 fathoms deep. The Sea Wolf's mast light and side navigation lights were burning. It was a clear, moonlit night, with six to ten mile visibility. There was little or no wind; the seas were calm and flat. It was the custom and practice in the coastal fishing industry for boats of the size and service of the Sea Wolf not to post a full-time lookout when shut down for the night and drifting on the high seas in calm, clear weather.
 
 
 4
 The Miss Judy contends that the Sea Wolf was "under way" within the meaning of the statutory International Rules since she was "not at anchor, or made fast to the shore, or around," see 33 U.S.C. § 144(c) (v); that she was required to keep a proper lookout under Rule 29, see 33 U.S.C. § 147a; and that she could not be absolved of liability because it had not been shown that her statutory fault could not have contributed to the collision. The The Pennsylvania, 86 U.S. (19 Wall) 125, 22 L.Ed. 148 (1873).
 
 
 5
 We do not read Rule 29 as imposing a duty to maintain a lookout under any and all circumstances. Anthony v. International Paper Co., 289 F.2d 574, 581 (4th Cir. 1961); see also Stevens v. United States Lines, 187 F.2d 670, 674-675 (1st Cir. 1951). The district court's finding that there was no such duty in the circumstances of this case — a fully lit vessel, dead in the water on the high seas in flat calm weather, with good visibility on a clear, moonlit, fog-free night — is not clearly erroneous.
 
 
 6
 Testimony regarding the custom and practice of the industry was cogent evidence supporting this finding. Cf. Prosser on Torts 135-137 (2d ed. 1955).
 
 II
 
 7
 The court's findings as to the value of the Sea Wolf and of the personal effects lost with her were not clearly erroneous.
 
 
 8
 The owners of the Sea Wolf recognize that their prayer for prejudgment interest invoked the trial court's discretion, see The President Madison, 91 F.2d 835, 847 (9th Cir. 1937). Since we have concluded that the court's finding as to the value of the Sea Wolf was not clearly wrong, we cannot say that the court abused its discretion in denying prejudgment interest on the ground that the much greater value which the owners had placed upon her was unreasonably high.
 
 
 9
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Honorable J. Warren Madden, Senior Judge of the United States Court of Claims, sitting by designation