852 F.2d 571
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not the case, res judicata, or collateral estoppel.
 
 Austin LENTZ and Mary Lentz, Plaintiffs-Appellants,
v.
M/V EASTERN GRACE, Defendant-Appellee.
 No. 87-3732.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 10, 1988.
Decided July 5, 1988.
 Before GOODWIN, NELSON, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 BACKGROUND
 
 2
 This admiralty action for maritime injury stems from a collision on the high seas between the TRYEND and the M/V EASTERN GRACE. On May 10th the crew of the Tryend secured the vessel for the night. The Tryend drifted without power, without a lookout, and without displaying a not-under-command signal in a commercial shipping lane on the high seas.
 
 
 3
 The Eastern Grace (appellee) posted two men to early morning bridge watch. They did not speak English. Their radio was tuned to the emergency channel and although the Eastern Grace maintained operable radar equipment, it was not in use. The weather conditions were good and visibility was at least ten miles.
 
 
 4
 The vessels collided at about 6:10 a.m. on May 11th. The district court found that it was full daylight by this time. Lentz radioed several "Mayday" emergency calls and identified the Eastern Grace as the colliding vessel. Lentz heard responses from Captain Price of the M/V Exxon Philadelphia and the Shadow Dew. The Eastern Grace did not respond and and it steamed away. The Exxon Philadelphia altered course to begin the rescue. The parties dispute the positioning of the colliding vessels at the time of the collision.
 
 
 5
 Lentz and his crew then abandoned ship. Captain Price radioed the Eastern Grace several times for assistance without success. Lentz and his crew came aboard the Exxon Philadelphia about three hours after the collision.
 
 
 6
 Lentz filed a maritime action in federal district court to recover damages for the loss of the ship, the fishing gear, and the catch on board, and for personal injuries sustained as a result of the collision. Lentz alleged that the Eastern Grace violated the International Regulations for Preventing Collisions at Sea (COLREGS), codified at 33 U.S.C. Sec. 1601 et seq., (Supp. IV 1986) by not avoiding the collision (the duty of the nonprivileged vessel in an overtaking or crossing situation) by failing to keep a lookout, by failing to sound a danger signal when collision was imminent, and by failing to stand by and render assistance, as required by the Stand By Act, codified as amended, 46 U.S.C. Secs. 2303, 2304 (Supp. III 1985).
 
 
 7
 The district court held that each vessel failed to maintain a proper lookout and that therefore each vessel was equally responsible for the collision. The district court did not determine which vessel was the privileged vessel, or whether a local custom of drifting without a lookout existed in the waters off Oregon. The district court also did not take into consideration whether the Eastern Grace's failure to stand by and render assistance exacerbated the injuries of the Tryend's crew. Appellants moved to amend the findings of fact and conclusions of law. The district court denied the motion and entered judgment. Appellants timely appealed.
 
 DISCUSSION
 
 8
 I. Application of the "Reliable Transfer" Comparative Fault Rule.
 
 
 9
 In reviewing the judgment of a district court sitting in admiralty, this court "may not set aside the judgment below unless it is clearly erroneous." McAllister v. United States, 348 U.S. 19, 20 (1954). Whether the district court applied the correct legal standard to determine each party's liability is a question of law that is freely reviewable by this court. Taylor v. Moram Agencies, 739 F.2d 1384, 1386 (9th Cir.1984). This court reviews the district court's factual findings for clear error. Id. at 1385. Under comparative negligence principles, the admiralty court's apportionment of fault constitutes a factual finding reviewed under the clearly erroneous standard. Vance v. American Hawaii Cruises, Inc., 789 F.2d 790, 793 (9th Cir.1986).
 
 
 10
 The district court held that the collision would not have occurred if either vessel had maintained a proper lookout. Therefore, the judge apportioned damages equally between the two parties. Whether the district court correctly allocated liability based on the relative fault of the parties depends on whether the court applied the comparative negligence principles outlined in United States v. Reliable Transfer Co., Inc., 421 U.S. 397 (1975).
 
 
 11
 Reliable Transfer changed the focus of the damages inquiry to be conducted by the trial court. In determining comparative fault, courts evaluate the various statutory violations and other contributory faults which might have been factors in the collision. Then the court determines from the particular circumstances of each collision the relative degree of fault of each party. See Id. at 411; Stevens v. F/V Bonnie Doon, 655 F.2d 206, 208 (9th Cir.1981); Complaint of Paducah Towing Co., Inc., 692 F.2d 412, 426-27 (6th Cir.1982); Allied Chemical Corp. v. Hess Tankship Co. of Delaware, 661 F.2d 1044, 1050-57 (5th Cir.1981); Complaint of Pacific Bulk Carriers, Inc. v. M/T Sadoharu Maru, 639 F.2d 72, 73-75 (2d Cir.1980); Higman Towing Co. v. Dredge Tom James, 637 F.Supp. 925 (E.D.Tex.1986); Cumberland County Util. Auth. v. M/V Delbar, 604 F.Supp. 383, 389 (D.N.J.1985); Complaint of BFT No. Two Corp., 433 F.Supp. 854, 875 (E.D.Penn.1977). Even the precedent on which appellee relies reviewed the possible contributing factors and examined each fault of each party before determining that the parties were equally at fault. See Granholm v. TFL Express, 576 F.Supp. 435, 448-51 (S.D.N.Y.1983). See also Allied Chemical, 661 F.2d at 1050-57.
 
 
 12
 Although we "will affirm the district court if the findings are sufficiently comprehensive and pertinent to the issues to provide a basis for the decision, or if there can be no genuine dispute about omitted findings." Vance, 789 F.2d at 792. Here the allegations left unconsidered by the district court have a significant bearing on the fault attributable to each party. Evaluating the additional indicia of fault as alleged by the parties highlights the incomplete nature of the court's analysis. While it is true that the collision would have been avoided if either party had posted an adequate lookout, several other statutory violations also constituted but-for causes of the collision. For instance, the collision could have been avoided if the Eastern Grace had used its radar to detect the Tryend. See BFT No. Two, 433 F.Supp. at 870-71; Allied Chemical, 661 F.2d at 1053; Arabian Amer. Oil Co. v. Hellenic Lines, Ltd., 633 F.Supp. 659, 668-69 (S.D.N.Y.1986) (failure to use radar fully raises presumption of contributory fault). Accord, Granholm, 576 F.Supp. at 449. COLREGS Rule 7 requires periodic use of radar to detect and avoid collisions. 33 U.S.C. Sec. 1601, Part A (1982). The significance of the failure to use radar may depend on other alleged violations, concerning which the district court made no findings. For instance, a custom of night drifting, if proven, would constitute a prevailing circumstance that triggered a duty to use radar, especially while in a commercial shipping lane. See Bonnie Doon, 655 F.2d at 208 (adjusting the degree of fault because "evidence of custom can be used to support a finding of negligence"); Darling v. Scheimer, 444 F.2d 514, 515 (9th Cir.1971) (discussing, as relevant to fault, the custom of night drifting practiced by fishing boats off the Washington coast); see also Higman Towing, 637 F.Supp. at 929 (failure to monitor radio channel constituted contributory negligence). Given the complex nature of navigational rules concerning privileged and burdened vessels, determining the status of the vessels can be essential when allocating relative fault.
 
 
 13
 The district court noted that "[e]ach party has charged numerous errors and omissions on the part of the other party. The court will not address those other issues because the lookout issue disposes of this case." The court concluded that the issue concerning which party was the privileged vessel was irrelevant in light of the breach of the parties' statutory duty to keep a lookout. This assessment of the parties' comparative fault tracks the approach taken by the abandoned divided damages rule. While the record may actually support a determination of equal fault, the district court did not reach any of the other bases of fault that might affect each party's culpability.
 
 
 14
 Because the district court failed to consider other but-for causes of the collision, and in addition failed to weigh the effect of other factors contributing to the crash, the district court misapplied the reasoning of Reliable Transfer. Therefore, we remand to the district court for additional factual findings as to the relative fault of each party, after considering all of the alleged bases for fault.
 
 
 15
 II. Personal Injury Compensation and Punitive Damages.
 
 
 16
 The district court found that "Lentz suffered shock and mental distress as well as bumps, bruises, and scrapes, but he sustained no compensable personal injuries." This language can be interpreted in several ways. Appellee argues, in essence, that the court's statement should be interpreted as a finding of fact. Appellee asserts that the district court must have assessed the severity of the injuries suffered and then concluded on the basis of that analysis that Lentz's injuries were de minimus. In advancing this argument, appellee admits that the injuries sustained were "of a type which could have been compensable had they been severe enough." Under an alternate interpretation the district court's language can be characterized as expressing a legal conclusion that the injuries are not recognized as compensable as a matter of law. Therefore, we remand to the district court for a redetermination of the damages to be awarded after conducting the fault analysis required by Reliable Transfer.
 
 
 17
 Additionally, the district court did not determine whether appellee's conduct was reckless or grossly negligent; it did not reach the punitive damages issue. Therefore this issue is remanded to the district court. On remand the district court should evaluate whether appellee's conduct falls within the requirements of the Stand By Act[1] and the court should make factual findings concerning the extent of any exacerbation of injuries caused by appellee's failure to render assistance.
 
 REVERSED AND REMANDED
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Stand By Act, as originally codified at 33 U.S.C. Sec. 367, imposed an absolute duty on the Eastern Grace to stand by and render aid. See Hill v. Fishing Vessel St. Rosalie, 277 F.Supp. 636 (D.Mass.1967). In 1984 Congress reorganized and updated various maritime laws. H.Rep. No. 338, Committee on Merchant Marine & Fisheries, 98th Cong., 2d Sess. (1984) reprinted in 46 U.S.C.A. Index at 391 (West Supp.1988). Although section 2303 is the successor statute to the Stand By Act, see id., the language was broadened to impose a duty on every vessel involved in a marine casualty