Hayes JONES, Plaintiff–Appellant,

v.

GENERAL MOTORS CORPORATION and United Auto Workers, Local 1112, Defendants–Appellees.

No. 90–3485.

United States Court of Appeals, Sixth Circuit.

Submitted March 15, 1991.

Decided July 23, 1991.

Hayes Jones, pro se.

Dennis M. Kelly, Stephen Q. Giblin, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Betty Grdina, Bobulsky & Grdina, Ashtabula, Ohio, for defendants-appellees.

Before KRUPANSKY and BOGGS, Circuit Judges, and WOODS, District Judge.*

BOGGS, Circuit Judge.

Hayes Jones appeals from a grant of summary judgment for defendants in his state law breach of contract claim against General Motors ("GM") and in his federal breach of duty of fair representation claim against the United Auto Workers, Local 1112 ("UAW"). For the following reasons, we affirm the district court.

I

Jones worked for GM in a position covered by a collective bargaining agreement ("CBA") with the UAW. Jones previously had been discharged by GM, but had been reinstated pursuant to a grievance filed on his behalf by the UAW. In October 1985, Jones was upset that his profit-sharing check did not include payment for time that he had not worked solely because of his prior discharge. On October 23, Jones spoke with his UAW district committeeman, Mr. Nott, about the alleged discrepancy. While Jones says that he used "less than flattering terms," he was fired for threatening to kill Mr. Nott. The UAW immediately filed a grievance on Jones's behalf.

Grievances under the CBA are subject to a four-step reconciliation process. After the UAW pursued Jones's grievance to a hearing under Stage 3 of this process, the UAW and GM struck a deal. The terms of that deal were embodied in a settlement agreement, which reads as follows:

> The grievant will be reinstated based on the condition that he is evaluated by Dr. Thomas Robb on Monday December 23, 1985 at 3:00 pm and he must be released as being able to return to work by the aforementioned doctor.

> If the grievant refuses to comply with the requested medical evaluation, the grievance will be considered resolved and the instant case closed.

Jones did not visit Dr. Robb on December 23. Jones received a letter dated January 8, 1986 that informed him that his appointment had been rescheduled for January 22, 1986. The January 8 letter included the address, date, and time for the appointment. It concluded with the following sentence:

> Accordingly, you are reminded that should you fail or refuse to keep this appointment, the grievance protesting your discharge will be considered resolved and the instant case closed.

Jones did keep this appointment, but refused to cooperate with Dr. Robb. He did not take any psychological tests or fill out any forms for the doctor.

Jones visited some UAW officials on July 22, 1986 to discuss his grievance. Minutes of the meeting taken by a UAW official show that Jones was told that the UAW would approach GM to discuss re-opening his grievance if Jones would take more tests, as Dr. Robb had suggested. The minutes show that Jones refused the offer.

Jones gives two different versions of the meeting. In his deposition, Jones frequently states that he was both told and that he understood that his grievance was closed and finished. Jones also stated that the UAW officials told him on July 22 that he

---

* The Honorable George E. Woods, United States District Judge for the Eastern District of Michi-
gan, sitting by designation.

would have to pay for any further testing by Dr. Robb.

Jones's affidavit opposing defendants' motion for summary judgment, made after his deposition, tells a different story. He states in his affidavit that he was told at the July 22 meeting that he could help himself by going to a psychologist on a list provided by the UAW at his own expense. He states that he was not told that his grievance was closed or settled.

The GM official involved with Jones's grievance testified at deposition that he considered the grievance closed when Jones refused to be tested by Dr. Robb in January 1986. The UAW official involved in the grievance stated in his deposition that he also considered the grievance closed when he spoke with Jones on July 22, 1986. While he did tell Jones to return to Dr. Robb, he believed that the UAW would have to plead for a favor from GM to re-open the grievance.

Jones filed this suit on June 12, 1987, eleven months after the July 22, 1986 meeting. Jones's suit demanded reinstatement in his old job. Jones states that he waited so long to file suit because he had filed a charge of racial discrimination with the EEOC, and he was waiting for his "right to sue" letter before filing.

Both defendants filed motions for summary judgment, contending that the breach of contract suit was pre-empted by § 301 of the Labor Management Relations Act ("LMRA"). They argued that his suit against GM was really a claim for breach of the CBA, and that this suit combined with his suit against the UAW to form a hybrid § 301 action. The defendants contended that the suit was therefore time-barred by the six-month statute of limitations that applies to hybrid actions. The district court agreed with defendants, and entered summary judgment in their favor. Plaintiff's timely appeal followed.

1. The Supreme Court has held that settlement agreements reached to end a union strike are "contracts" within the scope of § 301. *Retail*

## II

■ We must first decide if Jones's breach of contract suit against GM in reality is a claim under § 301 of the LMRA, and is therefore pre-empted. Section 301 provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties....

29 U.S.C. § 185(a).[1]

The Supreme Court has interpreted this language to require federal pre-emption of state law-based actions because federal law envisions a national labor policy that would be disturbed by conflicting state interpretations of the same CBA. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Pre-emption occurs when a decision on the state claim "is inextricably intertwined with consideration of the terms of the labor contract," *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985), and when application of state law to a dispute "requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988).

■ We are faced with a state law claim for breach of a settlement agreement. This agreement was arrived at by virtue of a grievance process established by a collective bargaining agreement, signed only by the parties engaged in collective bargaining, and promised reinstatement to a job whose terms and conditions are created by and subject to a collective bargaining agreement. The resolution of this claim will not involve the direct interpretation of a precise term of the CBA, but it will require a court to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a

*Clerks Int'l Association v. Lion Dry Goods*, 369 U.S. 17, 27–28, 82 S.Ct. 541, 547–48, 7 L.Ed.2d 503 (1962).

CBA. Does this process require an "interpretation of the terms" of a CBA triggering § 301 pre-emption? The district court answered this question in the affirmative, and we agree.

We have had many opportunities to interpret and apply the § 301 pre-emption doctrine set forth in *Lingle* and *Allis–Chalmers*. We have not applied a cramped and narrow construction of the dictates of *Lingle* and *Allis–Chalmers* in reaching our decisions, nor have we limited § 301 pre-emption to cases where the precise meaning of precise words in the CBA is the crux of the state-based claim. Rather, we have found many state-based claims pre-empted because they have implicated the federal policies underlying federal labor law. In doing so, we have followed the dictates of the Court in *Allis–Chalmers* that "[t]hese policies require that 'the relationships created by [a collective bargaining agreement]' be defined by application of 'an evolving federal common law grounded in national labor policy,'" *Allis–Chalmers*, 471 U.S. at 210–11, 105 S.Ct. at 1911, and that "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of those parties, are pre-empted...." *Allis–Chalmers, id.* at 213, 105 S.Ct. at 1912.

In applying these principles, we have stated that § 301 pre-empts state law when "employment relationships which are subject to a collective bargaining agreement" are implicated, *Mashund v. Earl C. Smith, Inc.*, 795 F.2d 589, 591 (6th Cir.1986), or when "the rights to be vindicated and the relationship between the parties are created not by state law, but by the collective agreement itself," *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033 (6th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2204, 109 L.Ed.2d 531 (1990), or when a state-based claim requires examining the practices and customs of a workplace whose conditions are governed by a CBA, *Ulrich v. Goodyear Tire & Rubber Co.*, 884 F.2d 936 (6th Cir.1989), or when "employees covered by a CBA ... rely upon the existence of a separate, individual employment contract giving rise to state law claims." *Fox v. Parker Hannifin Corp.*, 914 F.2d 795 (6th Cir.1990).

Our precedent compels pre-empting Jones's breach of contract suit. Jones alleges that GM breached the terms of the settlement agreement in refusing to reinstate him. However, Jones's argument ignores the fact that the settlement agreement itself is a creature wholly begotten by the CBA. The job from which Jones was fired and to which he seeks reinstatement exists solely by virtue of the CBA. The settlement agreement was the settlement of a grievance filed on Jones's behalf by the union pursuant to the dispute resolution procedures of the CBA. The parties agreeing to the settlement were GM and Jones's collective bargaining representative, the UAW. These parties have the power to determine Jones's right to employment at his job with GM solely by virtue of the LMRA and the CBA the two parties signed. Both the right Jones wants vindicated and the relationship between the parties embodied in the settlement agreement exist because of the CBA. In fact, if the asserted right itself is not directly created by the CBA, it would be the product of an individual contract for employment, which is itself forbidden by the CBA. Jones's claim is the archetype of a state-law claim that by its very nature involves an examination of the employment relationship of parties to a CBA, and is therefore pre-empted.

The Ninth Circuit reached this conclusion in an unpublished opinion in a similar situation. The plaintiff in *DeSherlia v. Alpha Beta Company*, No. 87–6045 (9th Cir. July 7, 1988) [852 F.2d 571 (table), 1988 WESTLAW 74728 (full text table) ] was terminated for allegedly violating company procedure. She filed a grievance through her union alleging that she was terminated because she had refused to submit to her supervisor's sexual harassment. The parties signed a settlement agreement resolving the grievance. The employer agreed to reinstate the plaintiff. The plaintiff was reinstated, but at the same store with the same supervisor whom she had accused of sexually harassing her. The plaintiff then

brought suit alleging, *inter alia,* a breach of the settlement agreement.

The Ninth Circuit found that her suit was pre-empted by § 301 because it involved an examination of the settlement agreement. We find the circuit's reasoning to be instructive:

> The settlement agreement was reached pursuant to the collective-bargaining agreement's grievance procedures. Whether Alpha Beta carried out the terms of the settlement agreement tortiously would involve examination and interpretation of the settlement terms. Any ambiguities regarding DeSherlia's agreement to be reinstated into her former position, a position which is covered by the collective-bargaining agreement, would necessarily entail interpretation of terms and conditions in the labor contract. Such an inquiry would encompass the grievance and negotiation process that led to the settlement agreement.... Because we conclude that DeSherlia's state tort claim cannot be resolved without interpreting the grievance settlement agreement and the collective-bargaining agreement, we cannot say that her claim is a nonnegotiable independent state-law right for section 301 preemption purposes.

*DeSherlia,* No. 87–6045 at 1988 WESTLAW 74728, pp. 3–4.[2]

Similar reasoning applies to Jones's claim.

The one case that Jones cites in support of his claim that his contract suit is not pre-empted, *Woollett v. Bankers Life Co.,* 572 F.Supp. 650 (E.D.Mich.1983), is inapposite. The court in *Woollett* did not apply the six-month statute of limitations applicable to hybrid § 301 suits because the state claim did not facially state a claim for breach of the CBA, and hence was not pre-empted. The Supreme Court in *Allis–Chalmers,* however, has since held that the pre-emptive effect of § 301 applies to state-law claims that do not facially allege a breach of the CBA.

## III

■ Our holding that Jones's breach of contract claim is really a § 301 suit for breach of a labor contract transforms his suit into a "hybrid" § 301 claim. A hybrid § 301 suit is one that presents claims against the employer for breach of the CBA and against the union for breach of the duty of fair representation.

The Supreme Court has held that a six-month statute of limitations applies to hybrid § 301 suits. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983). We have held that the statute begins to run when the plaintiff knew or should have known in the exercise of reasonable diligence of the acts that constitute the § 301 violation. *Adkins v. International Union of Electrical, Radio & Machine Workers,* 769 F.2d 330, 335 (6th Cir. 1985). A decision by a union not to arbitrate a claim has been held to constitute an event that could trigger a plaintiff's knowledge of the acts constituting the violation. *McCreedy v. Local Union No. 971, UAW,* 809 F.2d 1232 (6th Cir.1987).

The district court made an explicit finding that Jones should have known that his grievance was closed and that he would not be reinstated according to the settlement agreement as of his meeting with UAW officials on July 22, 1986. Based on this finding, the court granted defendants' motion for summary judgment on the ground that Jones's suit was time-barred. Jones did not file suit until June 12, 1987, almost eleven months after the July 22, 1986 meeting.

We may not overturn this finding of fact unless we find it "clearly erroneous." Fed. R.Civ.P. 52(a). Given Jones's deposition testimony, where he stated at least ten times that he was told that the matter was closed as of July 22, the court's finding was not clearly erroneous. The only evidence that might overturn that conclusion is provided by Jones in his affidavit, where

---

**2.** *DeSherlia* is cited in the table at 852 F.2d 571. A full copy of the opinion may be found only in WESTLAW, and the WESTLAW copy provides

no pagination. The quote is from the third and fourth pages of a printed copy obtained through on-line printing from WESTLAW.

he states that he was not told on July 22 that his grievance was closed. However, it is well settled that a plaintiff may not create a factual issue for the purpose of defeating a motion for summary judgment by filing an affidavit contradicting a statement the plaintiff made in a prior deposition. *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986); *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir.1984). We affirm the district court's finding that Jones knew or should have known as of July 22, 1986 that his grievance was closed and that he would not be reinstated pursuant to the settlement agreement. As this knowledge was all he needed to discover that GM had breached the agreement and that the UAW had not represented him fairly, his suit is time-barred.

Jones urges us to excuse his failure to file suit within the statute of limitations because of his ignorance of the "complex state/federal legal systems." He states that he thought that he had to wait for his "right to sue" letter from the EEOC, before which he was pursuing a claim of racial harassment, and that he filed suit within 90 days after he received that letter.

We agree with the district court that Jones is urging us to apply the doctrine of equitable tolling. To successfully raise a claim of equitable tolling, a party must show either fraudulent concealment of the critical facts that would lead one to know that he can sue, or a misrepresentation of those facts—whether made in good faith or not—that was calculated to induce a plaintiff to forego the right to sue. *Diminnie v. United States*, 728 F.2d 301, 305 (6th Cir.), *cert. denied*, 469 U.S. 842, 105 S.Ct. 146, 83 L.Ed.2d 85 (1984). Ignorance of the legal process alone will not provide the basis for an equitable tolling claim. *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1127 (6th Cir.1982). Accordingly, we affirm the district court's grant of summary judgment for defendants because Jones's suit is time-barred.