972 F.2d 348
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ulf P.L. RYBERG, Plaintiff-Appellant,
v.
INDOOR SOCCER CLUB OF CLEVELAND, Inc., d.b.a. Cleveland
Force Soccer Team and Cleveland Indoor Soccer
Company, Ltd., Defendant-Appellee.
 No. 91-4004.
 United States Court of Appeals, Sixth Circuit.
 July 31, 1992.
 
 Before JONES and GUY, Circuit Judges, and JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, Ulf P.L. Ryberg, appeals the district court's decision granting summary judgment for defendant in this diversity action for tortious breach of contract and breach of a collective bargaining agreement. For the reasons that follow, we affirm.
 
 
 2
 * Ryberg, a citizen of Sweden, signed a contract on October 24, 1985 with the defendant-appellee, the Cleveland Indoor Soccer Company, Ltd. ("the Force"), to play soccer for their Cleveland Force franchise during the 1985-87 playing seasons. The Force, at all pertinent times, was a part of the Major Indoor Soccer League ("MISL"), was an employer within the meaning of the National Labor Relations Act, and was an Ohio business in full compliance with the Ohio Workers' Compensation Act.[1] Ryberg, during his tenure as an employee of the Force, was a member of the MISL Players Association ("Union").
 
 
 3
 At all times during Ryberg's employment, MISL and the Union were parties to a collective bargaining agreement ("CBA"), which governed the terms and conditions of his employment. The CBA requires each player to execute with his franchise the "Standard Player Contract" ("Contract"). The Contract, which was signed by Ryberg and the Force in October of 1985, was in effect in October 1986, when Ryberg was discharged from the team. The Contract provides in relevant part as follows:
 
 
 4
 SECTION 8.2 Injury Grievance. If Player believes that at the time of termination of this contract by Club he was physically unable to perform the services required of him by this contract because of an injury incurred in the performance of his services under this contract, Player may, within a reasonably brief time after examination by the Club physician, submit at his own expense to examination by a physician of his choice. If the opinion of Player's physician with respect to his physical ability to perform the services required of him by this contract is contrary to that of the Club's physician the dispute will be submitted within a reasonable time to final and binding arbitration by the League Commissioner on application by either party.
 
 
 5
 J.A. at 102. The CBA, the terms of which control in the event of a conflict between its provisions and those of the Contract, provides that disputes over wages and injuries are to be decided by certain grievance procedures or, finally, by binding arbitration.
 
 
 6
 The Force alleges that the reason for Ryberg's discharge was his "inability to exhibit sufficient skill or competitive ability to qualify for or continue as a member of the Force." Br. of Cleveland Indoor Soccer Co. at 5. Ryberg claims, on the other hand, that the team physician pronounced him "unable to continue to play soccer because of the ... injury" received during a game in January of 1986. Br. of Ryberg at 4. In any event, after terminating Ryberg, the Force refused to pay the remaining wages he would have earned under the Contract. The Force also declined to pay for Ryberg's necessary medical treatment related to the injury he allegedly received during the January 1986 soccer game. Because Ryberg believed the Force was required to make such payments under both the CBA and the Contract, he complained about the alleged breach to the Union by letter dated October 21, 1986.[2]
 
 
 7
 The Union filed a grievance on his behalf on December 15, 1986, by sending a letter to the Force. The Force responded to Ryberg's claims, denying the allegations in a letter dated December 30, 1986 and allegedly received on January 13, 1987; both dates fell outside the required ten-day response period. The Union sent another letter on February 2, 1987, notifying the Force that it would appeal the grievance to the Contract arbitrator. The grievance was never brought to arbitration, however; the Union decided thereafter not to pursue the grievance. Ryberg alleges that he or his counsel contacted the Union at least eighteen times over the ten months following February 2, 1987, and emphasizes that, nonetheless, the Union did not proceed with the matter.
 
 
 8
 On September 1, 1988, Ryberg filed a diversity action against the Force in the court below. His complaint alleged that the Force had failed to compensate him and to pay his medical expenses following a soccer injury to his ankle and knee, in violation of both the Contract and the CBA. The Force immediately moved for summary judgment on the ground that it was entitled to judgment as a matter of law under Section 301 of the Labor-Management Relations Act, 1947 ("Act"), 29 U.S.C. § 185 (1988). The district court agreed with the Force and granted summary judgment in its favor on September 19, 1991. This timely appeal followed.
 
 II
 
 9
 Appeals from summary judgments present questions of law; therefore, we review them de novo. Pinney Dock & Transp. Co. v. Pennsylvania Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). Summary judgment is properly granted where the parties' dispute presents no genuine issue of material fact. Fed.R.Civ.P. 56(c); Curto v. City of Harper Woods, 954 F.2d 1237, 1241 (6th Cir.1992) (per curiam). In reviewing a grant of summary judgment, the court must view all facts and inferences in the light most favorable to the nonmoving party. SEC v. Blavin, 760 F.2d 706, 710 (6th Cir.1985) (per curiam).
 
 
 10
 * The preliminary issue to be decided in determining whether the district court's grant of summary judgment was proper is whether Ryberg could bring state-law claims in diversity on the facts and issues of his case, or whether, instead, federal labor law preempts such actions. We believe it to be overwhelmingly clear that Congress has preempted any state actions concerning the interpretation of collective bargaining agreements, that being one of the primary objectives of the Act. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209-10 (1985). The following law directs federal courts to hear claims like those Ryberg brings only as federal labor law causes of action.
 
 
 11
 First, section 301 of the Act provides in relevant part that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The Supreme Court, in interpreting the effect of this language, stated
 
 
 12
 that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.
 
 
 13
 Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 23 (1983) (footnote omitted). The Court has further stated that "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements." Allis-Chalmers, 471 U.S. at 213. "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." Id. at 220 (citation omitted).
 
 
 14
 The law of this circuit has, in several cases, strictly followed that set forth by the Supreme Court. See, e.g., Adkins v. General Motors Corp., 946 F.2d 1201 (6th Cir.1991), cert. denied, 112 S.Ct. 1936 (1992); Jones v. General Motors Corp., 939 F.2d 380 (6th Cir.1991). This circuit, moreover, has specifically found "that § 301 pre-empts state law when ... 'employees covered by a CBA ... rely upon the existence of a separate, individual employment contract giving rise to state law claims.' " Jones, 939 F.2d at 383 (quoting Fox v. Parker Hannifin Corp., 914 F.2d 795, 801 (6th Cir.1990)).
 
 
 15
 Clearly, the facts of this case place it squarely under the law of the above-cited cases. Ryberg's claims of tortious breach of contract and disregard of his medical well-being are tort claims that are dependent for their resolution upon an interpretation of the CBA and its derivative Contract. Ryberg's complaint plainly alleges that the entitlements he was denied were derived from these documents. Ryberg cites only one case to support a contrary position, Vaca v. Sipes, 386 U.S. 171 (1967), noting that the Court therein recognized exceptions to the federal preemption of the labor field, which "demonstrate that the decision to pre-empt federal and state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national policies of concurrent procedural and administrative remedies." Id. at 180. He then contends that, because he alleges, without support, that his claims go far beyond the borders of the CBA, his actions are not preempted. Vaca, however, concerns the ability of an employee to bring a breach of contract claim, despite his failure to exhaust all his contractual remedies, when he can prove that his union has breached its duty of fair representation. Id. at 174-76, 185. Ryberg's citation of Vaca is inapposite because he applies the Court's holding incorrectly, taking it out of context; the case does not hold that state-law claims like his are not pre-empted by section 301. See id. at 174. Ryberg's claims are completely bound up in what he alleges are his rights under the CBA and its derivative Contract. Thus, the district court was correct in holding that Ryberg's claims must be analyzed as federal labor-contract claims.
 
 B
 
 16
 The remaining issue is whether Ryberg's complaint states a claim under section 301 of the Act. The Supreme Court has held that, before an employee can bring a suit against an employer for breach of a labor contract, the employee must first exhaust all of his remedies under that contract. Republic Steel Corp. v. Maddox, 379 U.S. 650, 652-53 (1965). Nevertheless, Ryberg argues in the first instance that exhaustion of remedies is not always required. The law he cites, however, clearly applies solely to intra-union remedies. See, e.g., Clayton v. UAW, 451 U.S. 679, 687-89 (1981); Ruzicka v. General Motors Corp., 523 F.2d 306, 312 (6th Cir.1975). The remedies involved here are contractual remedies, which an employee must always exhaust unless one of a few, specific, narrow exceptions applies.
 
 
 17
 Ryberg addresses two of those exceptions, contending, of course, that either or both applies to his case. The first exception that Ryberg seeks to apply is that exhaustion of his contractual remedies would have been futile. The Supreme Court held that the futility exception applies where those who would pass on a grievance are the same ones who are charged with violating an employee's rights. Glover v. St. Louis-S.F. Ry., 393 U.S. 324, 330 (1969). To this requirement, this circuit has added that, to utilize the exception, an individual employee must make a clear and positive showing that resort to contractual remedies would have been in vain. Terwilliger v. Greyhound Lines, 882 F.2d 1033, 1039 (6th Cir.1989), cert. denied, 495 U.S. 946 (1990). Moreover, one of the district courts in our circuit has held, in what we consider to be a very persuasive opinion, that use of the exception where the individual employee had the right to initiate the process on his own, and failed to do so, is precluded. Ison v. Benham Coal, 668 F.Supp. 594, 596 (E.D.Ky.1987). The Force argues, on the basis of these cases, that Ryberg has not satisfied the requirements of the futility exception.
 
 
 18
 Ryberg responds that, after the Union received the Force's response letter, the Union gave notice of appeal, but failed subsequently to act upon it, despite his continued, anxious requests that it do so. Despite this argument, we agree with the Force that the cases above require us to find that an attempt by Ryberg to exhaust his contractual remedies would not have been futile. The CBA clearly states that
 
 
 19
 [i]f the Grievance Committee fails to resolve a grievance within 5 days ... either the player, the Club, the Union or MISL may ... appeal such grievance by filing written notice thereof with the outside arbitrator. The grievant(s) may at his (their) discretion bypass the Grievance Committee and proceed directly to arbitration by filing notice of appeal with the arbitrator within 20 days following the receipt of the answer.
 
 
 20
 J.A. at 58-59 (emphasis added). Thus, as the Ison court stated, "there was nothing prohibiting plaintiffs from initiating the arbitration process themselves. The situation being such that plaintiffs did not even attempt to begin the arbitration process on their own, plaintiffs cannot now be heard to argue that arbitration was rendered futile by defendants." 668 F.Supp. at 596. Significantly, the contract in Ison was less specific about the plaintiffs' right to so proceed than was the CBA in the case at bar. See id. (holding that, although the CBA provided "that wages shall not be a subject of arbitration," this provision did not cover disputes involving vacation pay). Ryberg has not shown that it would have been futile for him to have appealed directly to the arbitrator, who was a neutral third party; therefore, his case is not covered by the futility exception to the exhaustion-of-remedies requirement.
 
 
 21
 The second exception under which Ryberg attempts to fit his case is one available whenever the employer itself has repudiated the CBA. This circuit has held that where an employer has repudiated the grievance or arbitration procedures of the applicable CBA, it cannot then require the employer to exhaust those same procedures. See Terwilliger, 882 F.2d at 1039. Ryberg offers several examples of the Force's supposed repudiation, in an effort to obtain the benefit of this exception.
 
 
 22
 First, Ryberg claims that the refusal to compensate him under the CBA is itself such a repudiation. The case law is clear, however, that a repudiation of the substance of the CBA is not the same as a repudiation of the grievance procedure, for purposes of this exception. See, e.g., Bailey v. Bicknell Minerals, 819 F.2d 690, 692 (7th Cir.1987); Redmond v. Dresser Indus., 734 F.2d 633, 636 (11th Cir.1984) (per curiam). Ryberg also points to the Force's passivity in the scheduling of the desired arbitration hearing; however, the Force had no duty under the CBA to actively pursue a hearing on an employee's grievance.
 
 
 23
 Finally, Ryberg emphasizes the fact that the Force was late in responding to the Union's original letter of grievance on his behalf, which is a default under the CBA. The Force responds that the recipient of the letter was on Christmas vacation at the time of its arrival, and that immediately upon his return, he responded to the grievance. The Force also points out that the CBA provides that in case a party fails to meet any time limit therein, the opposing party may then notify the tardy party and move on to the next step of the process. Thus, Ryberg could have continued the grievance process after the Force's tardy response. Because the grievance process was merely delayed, rather than halted, as a result of the Force's untimely response, we do not believe the missed deadline was the equivalent of a full repudiation of the CBA's grievance procedure. The repudiation exception, therefore, does not apply. Accordingly, Ryberg's suit is precluded as a matter of law, under section 301, and summary judgment, on the ground that he failed to exhaust his contractual remedies, was appropriate.
 
 III
 
 24
 Accordingly, we AFFIRM the district court's order granting summary judgment in favor of the defendant.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Force decided to cease operations on July 22, 1988, because of financial losses
 
 
 [2]
 Ryberg also filed an application with the Ohio Bureau of Workers' Compensation concerning the same allegations. That application was resolved in state court to his benefit