33 F.3d 54
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sandra JEWELL and Leslie Jewell, Plaintiffs-Appellants,
v.
Officer Dan HALL, Officer Kenneth Underwood, and Shelby
Township, Defendants-Appellees.
 No. 93-1976.
 United States Court of Appeals, Sixth Circuit.
 Aug. 12, 1994.
 
 Before: GUY and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this civil rights case, plaintiffs appeal the decision of the district court granting defendants' motion for summary judgment. Contrary to the findings of the district court, plaintiffs argue that they have standing to assert their claims and that genuine issues of material fact exist precluding summary judgment. For the following reasons, we affirm.
 
 I.
 
 2
 In May 1991, Sandra Jewell,[1] a Native American woman, initiated this action by filing a three-count complaint in federal district court. Named as defendants were Shelby Township and two township police officers, Dan Hall and Kenneth Underwood. Jewell alleged that defendants had violated her constitutional rights under the First, Fourth, and Fourteenth Amendments by (1) having cars towed from the premises of H & S Auto, an automobile salvage yard that she managed, and (2) stopping her on at least two separate occasions for traffic violations without probable cause to do so. Jewell's complaint added a state claim in which she alleged that the township had tortiously interfered with a business relationship; to wit, her negotiations with H & S Auto over her possible purchase of the enterprise. Jewell sought compensatory and punitive damages in excess of $20 million.
 
 
 3
 In June 1993, the district court sua sponte dismissed without prejudice Jewell's state law claim, reasoning that an exercise of pendent jurisdiction over these claims would not serve the interests of judicial economy and trial convenience. After the court denied Jewell's motion to reconsider this decision, defendants moved for summary judgment with respect to the remaining federal claims. The court granted defendants' motion in June 1993, stating:
 
 
 4
 The court finds that plaintiff has failed to establish standing to sue regarding the removal of cars from her place of employment. Plaintiff's complaint, response brief and affidavit are replete with conclusory allegations that she has a proprietary interest in the property from which cars were towed and that on some occasions her cars were towed.... Because plaintiff has failed to "set forth specific facts showing that there is a genuine issue for trial," defendants are entitled to summary judgment on plaintiff's claim concerning the towing of cars.
 
 
 5
 The same is true as to plaintiff's claim regarding "numerous occasions" on which she was stopped for traffic violations. Defendants have submitted that plaintiff was stopped only twice, both times by defendant Underwood. On April 7, 1988, defendant stopped plaintiff "because she was driving across the yellow line and was weaving." On April 7, 1991, defendant stopped plaintiff "because of her failure to signal while turning."
 
 
 6
 "When an officer observes a traffic violation, however minor, he has probable cause to stop the driver of the vehicle." United States v. Cummins, 920 F.2d 498, 500 (8th Cir.1990). Because the officer in the present case had probable cause to stop plaintiff for traffic violations, plaintiff has failed to allege facts sufficient to support a claim under sections 1983 and 1985.
 
 
 7
 (App. 133-34) (citation omitted.)
 
 
 8
 This appeal followed.
 
 II.
 
 9
 We consider Jewell's assignments of error in light of the operative standard of review, which in the case of summary judgment is de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). We examine the grant of summary judgment to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1310 (6th Cir.1989). Although we must draw all justifiable inferences in favor of the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), there must be a genuine disagreement regarding an item of material fact. Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir.1986). The evidence presented, if accepted by the jury, must be sufficient to permit the plaintiff to recover.
 
 
 10
 At the outset, Jewell challenges the district court's conclusion that she lacks standing to prosecute her claim with respect to the towing of cars from H & S Auto. In Lujan v. Defenders of Wildlife, 112 S.Ct. 2130, 2136-37 (1992), the Supreme Court discussed at some length the concept of standing:
 
 
 11
 Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally-protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."
 
 
 12
 The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial."
 
 
 13
 (Citations omitted.)
 
 
 14
 Judged against this backdrop, Jewell's contention that she has standing to pursue her claim relative to the cars towed from H & S Auto is plainly untenable. Jewell maintains that she had a legally protected interest in H & S Auto and the property on which it sits by virtue of the fact that she had attempted to purchase the business entity sometime in 1987. As part of this attempt, Jewell contends that she
 
 
 15
 provided monies for taxes, inventory, licenses, mortgage payments, attorney fees, improvement to the land including asphalt, fill and leveling of the land in and of itself, equipment costs, along with other costs of the operation of H & S Auto, with the understanding that said investment would be subtracted from the purchase price and would operate as a Right of First Refusal on any subsequent sale of the property by the owners.
 
 
 16
 (Appellants' Brief at 4.)
 
 
 17
 Jewell, however, did not produce any documentation to support her claim that she had committed monies to the company for the purposes described above. Even if we were to assume that she had, in fact, done so, this would make little difference to our analysis. Jewell's hope that someday she would be able to purchase H & S Auto from its current owners, Robert and Ronald Pentz, is simply too tenuous and speculative a proposition to confer on her the standing to which she lays claim.
 
 
 18
 Equally unavailing is Jewell's assertion that she has a legally protected interest in the cars that were towed from the premises of H & S Auto. Indeed, during her deposition, Jewell admitted that she did not own the cars in question and that the cars actually belonged to H & S Auto. That Jewell subsequently submitted an affidavit contradicting this aspect of her deposition testimony does not alter our conclusion. As we have previously made clear, "it is well settled that a plaintiff may not create a factual issue for the purpose of defeating a motion for summary judgment by filing an affidavit contradicting a statement the plaintiff made in a prior deposition." Jones v. General Motors Corp., 939 F.2d 380, 385 (6th Cir.1991) (citing Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir.1986); Biechele v. Cedar Point, Inc., 747 F.2d 209, 215 (6th Cir.1984)).
 
 
 19
 We also reject Jewell's charge that, by stopping her on two separate occasions for traffic violations, Underwood violated her constitutional rights. On this point, we are in full agreement with the district court, and we see no reason to elaborate on its well-reasoned analysis.
 
 
 20
 In her last assignment of error, Jewell argues that the district court erred by dismissing without prejudice the claim she advanced in Count III of her complaint.[2] To bolster her argument, Jewell characterizes this claim as a federal one for which the exercise of federal question jurisdiction is appropriate. This effort, however, is to no avail, for Count III on its face clearly sets forth a state tort claim for interference with a business relationship. As such, the district court, pursuant to the doctrine of pendent jurisdiction, had discretion to determine whether to exercise jurisdiction over the claim. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Under the circumstances, we cannot conclude that the court abused its discretion by disposing of this claim in the manner it did.[3]
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Although Leslie Jewell, Sandra Jewell's brother, is also a named plaintiff, he was not involved in the incidents that gave rise to this action
 
 
 [2]
 Count III reads in relevant part:
 
 
 [24]
 On or about January 1, 1988, and thereafter during the time Plaintiffs were negotiating with a third party, H & S Auto, Inc., in connection with the business relationship described in paragraph 3, Defendant began a course of conduct consisting of causing Plaintiffs to be harassed with Police misconduct and denying them the opportunity to be licensed, as required by Shelby Township ordinances, said harassment and license denial was intended to disrupt Plaintiffs' relationship with a third party, an[d] which in fact did disrupt that relationship
 
 
 [25]
 In engaging in the conduct described in the paragraph above, Defendant intended to impair, and destroy Plaintiffs' business relationship with the third party, H & S Auto, Inc., thereby destroying Plaintiffs' expectation of economic gain. Defendant engaged in the interfering conduct with malice toward Plaintiffs and a desire to injure Plaintiffs economically, and with wantonness and disregard of Plaintiffs' rights. Defendants conduct was improper, unlawful, and unfair in that it wrongfully denied Plaintiffs the opportunity to be licensed as required by Shelby Township ordinance, thereby denying the sale of said property to Plaintiffs, as well as encouraging or failing to stop or prohibit Police harassment
 
 
 [26]
 The conduct engaged in by the Defendant described in the preceding paragraph was the proximate cause of the loss or impairment of Plaintiffs' business relationship with the third party, H & S Auto, Inc., which resulted in the Plaintiffs' loss of the expediency of economic gain
 
 
 [27]
 The denial of licenses and Police harassment was caused as a result of Plaintiffs' National Origin, in that they are Native American
 
 
 [2]
 Defendant was not justified nor privileged to engage in the conduct described above, which resulted in the impairment or loss of Plaintiffs' business relationship with a third party, H & S Auto, Inc
 WHEREFORE Plaintiffs respectfully pray judgment against the Defendant, and request[ ] that the court grant relief as follows:
 A. Compensatory damages for the value of the business opportunity or expectancy that was lost, as a result of the Defendant's tortious and improper interference, the amount of which is Ten Million Dollars ($10,000,000).
 B. Any other relief to which Plaintiff may be properly and justly entitled.
 (App. 11-13.)
 
 
 [3]
 Following the motion for summary judgment, Jewell's assertion of the "denial of licenses" was wholly unsubstantiated. There is no indication as to what licenses she had in mind, whether any actual application was ever made and by whom, if anyone, such licenses were denied. The judge had originally dismissed only the state portion of the claim, and did not err in granting summary judgment as to the remaining federal portions